# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1546

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Rodney Keith Rodebaugh, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____            Appeals from the United States
District Court for the
No. 08-1581            Western District of Missiouri

_____

[PUBLISHED]

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Bruce Allen Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

No. 08-1675
_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Eugene Rodney Rodebaugh,                      *
                                             *
            Appellant.                        *


_____

Submitted:  December 9, 2008
Filed:  April 13, 2009
_____

Before MELLOY, and BENTON, Circuit Judges, and DOTY,[1] District Judge.
_____

DOTY, District Judge

      Appellants Rodney Keith Rodebaugh ("Keith Rodebaugh"), Bruce Allen
Johnson ("Johnson") and Eugene Rodney Rodebaugh ("Eugene Rodebaugh") appeal
their convictions and sentences after a jury trial in the district court.[2]  We affirm.

_____

      [1]The Honorable David S. Doty, United States District Court for the District of
Minnesota, sitting by designation.

      [2]The Honorable Nanette K. Laughrey, United States District Judge for the
Western District of Missouri.

# BACKGROUND

On March 5, 2007, a grand jury charged appellants and seventeen others in a fifty-four count fourth superseding indictment with a variety of narcotics and weapons charges. Appellants and three others proceeded to a jury trial on August 20, 2007.

At trial, the government's expert witness, Special Agent Steve Mattas ("Mattas"), testified that the Drug Enforcement Administration began wiretap surveillance of Keith Rodebaugh's residential telephone and cell phone on May 26, 2005, due to suspected drug trafficking. Sixty-six recorded calls were played for the jury. Mattas testified about the meaning of the code words and slang defendants used during the calls, interpreting callers' requests for "wheels," "carburetors," "movies," "parts," "tools," "prescriptions," "oil," "packs of cigarettes" and "tires" as drug-seeking inquiries. (Trial Tr. at 239-42, 374-83.) Mattas also explained to the jury the meaning of defendants' vague conversations. For instance, according to Mattas, a caller who said he wanted to "see if [Keith Rodebaugh] had them motors" and later asked "[w]hat's the possie of getting bored like 30 over?" was asking about the availability of marijuana. (Id. at 235.) Defendants objected to Mattas's testimony on the basis that it invaded the province of the fact finder. The district court overruled the objection but granted defendants' request for a continuing objection on that same basis. (Id. at 210-11, 216.)

On August 27, 2007, the jury convicted defendants on some counts and acquitted them on others. As relevant to this appeal, all appellants were convicted of using a telephone to facilitate a controlled substance offense in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.[3] In addition, the jury convicted Keith and Eugene

---

[3]Keith Rodebaugh was convicted on eleven counts of using a telephone to facilitate a controlled substance offense, Eugene Rodebaugh was convicted on two counts and Johnson was convicted on one count.

Rodebaugh of conspiring between 1998 and 2005 to distribute or possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.[4] The jury later returned a special verdict that held Keith and Eugene Rodebaugh responsible on the conspiracy count for 100 and 50 kilograms of marijuana, respectively.[5]

At Keith Rodebaugh's February 15, 2008, sentencing hearing, the district court held Keith responsible for 2,500 kilograms of marijuana on the conspiracy conviction based upon the testimony of government informant Ben Cavin ("Cavin"). This resulted in a base offense level of thirty-two. See U.S. Sentencing Guidelines Manual § 2D1.1(c) (2007). After applying enhancements for an aggravating role and possession of a dangerous weapon, the court determined that Keith's adjusted offense level was thirty-seven. See id. §§ 2D1.1(b)(2), 3B1.1. With a criminal history category of III, his applicable guidelines range was 262 to 327 months, and he was sentenced to 262 months imprisonment.[6] On March 7, 2008, the district court heard evidence that Eugene Rodebaugh allowed Keith to store marijuana at his home and was accountable for at least thirty-two kilograms per month for two years. As a result, the court held Eugene responsible for 768 kilograms of marijuana on the conspiracy conviction, resulting in a base offense level of thirty. See id. § 2D1.1(c). The court then applied a two-level enhancement for possession of a dangerous weapon, resulting in an adjusted offense level of 32. See id. § 2D1.1(b)(2). With a criminal history category of II, Eugene Rodebaugh's applicable guidelines range was 135 to 168

[4]In addition, the jury convicted Keith Rodebaugh of two counts of distribution of cocaine, one count of distribution of marijuana, one count of possession with intent to distribute marijuana and one count of being a felon in possession of ammunition. Eugene Rodebaugh was also convicted of one count of possession with intent to distribute marijuana.

[5]The special verdict form permitted the jury to choose either 1,000, 100 or 50 kilograms of marijuana.

[6]The court imposed additional lesser concurrent sentences for the other counts of conviction.

months, and he was sentenced to 144 months imprisonment.[7] On the same day, the court sentenced Johnson to 48 months imprisonment. Appellants now challenge their convictions and sentences.

## DISCUSSION

### I. Expert Testimony

Keith and Eugene Rodebaugh first argue that the district court abused its discretion by allowing Special Agent Mattas to testify as an expert about the meaning of common, everyday language. Pursuant to Rule 702 of the Federal Rules of Evidence, an expert may assist a jury in understanding the jargon and code words used by drug dealers. See United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996); United States v. Lowe, 9 F.3d 43, 47 (8th Cir. 1993), cert. denied, 510 U.S. 1181 (1994). When jurors can make a common sense determination of the evidence without the technical aid of an expert, however, expert testimony should be excluded. See United States v. Davis, 457 F.3d 817, 824 (8th Cir. 2006); United States v. Kime, 99 F.3d 870, 884 (8th Cir. 1996). Such exclusion prevents an expert from usurping "'the exclusive function of the jury to weigh the evidence and determine credibility.'" See United States v. Azure, 801 F.2d 336, 340 (8th Cir. 1986) (quoting United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981), cert. denied, 454 U.S. 829 (1981)). We review a district court's decision to admit expert testimony for an abuse of discretion. See United States v. Robertson, 387 F.3d 702, 704 (8th Cir. 2004); United States v. Jordan, 236 F.3d 953, 955 (8th Cir. 2001). If the testimony was improper, we will reverse only if there is a significant possibility that the testimony substantially impacted the jury. See United States v. Brown, 110 F.3d 605, 610 (8th Cir. 1997); Delpit, 94 F.3d at 1145.

---

[7]The court again imposed additional lesser concurrent sentences for the other counts of conviction.

To support their argument, the Rodebaughs cite the following testimony:

[Caller's voice:]  What's the business, man?
[Mattas's testimony:] [He] was inquiring if . . . 30 pounds of marijuana was available.

[Caller's voice:] Did you look at those things you brought back?
[Mattas's testimony:] [Keith] Rodebaugh is inquiring if [he] had looked at that marijuana he had brought back from Kansas City.
[Caller's voice:] Yeah, because I didn't really want to go all the way around with everything.
[Mattas's testimony:] [H]e didn't want to drive around with the marijuana in his car.

[Caller's voice:] If I do that, do you want me to do anything for you while I'm there?
[Mattas's testimony:] Eugene Rodebaugh was asking Keith Rodebaugh if he . . . needed to pick up any additional marijuana.

[Caller's voice:] Yeah, try to wrap that up for me, man.
[Mattas's testimony:] [H]e was asking [Johnson] to get money to him for previous marijuana.

[Caller's voice:] Do you already got the stuff?
[Mattas's testimony:] Theresa Rodebaugh was asking [him] if he already had the marijuana.

[Caller's voice:] That's it, but I'm about ready, ready.
[Mattas's testimony:] [He] was ready to acquire more marijuana.

[Caller's voice:] You know I'm outtie.
[Mattas's testimony:] [H]e was going to be leaving the United States.

[Caller's voice:] What's up with your buddy?
[Mattas's testimony:] [Keith] Rodebaugh was asking about [him].

(Trial Tr. at 236, 241-42, 368, 371, 386, 389, 391, 393.)

-6-

Assuming that Mattas's challenged testimony was improper, we find that it did not substantially impact the jury. First, Mattas's opinions were substantiated by other evidence, including Cavin's testimony and surveillance by undercover officers. Delpit, 94 F.3d at 1145 (expert's testimony did not substantially impact jury when other evidence necessitated same conclusion). Second, the district court expressly instructed the jurors that they should treat Mattas's testimony like that of any other witness and that his opinion was not binding. See Brown, 110 F.3d at 611 (no substantial impact when court instructed jury it was not bound by expert's opinion); Delpit, 94 F.3d at 1145 (same); United States v. Daniels, 723 F.2d 31, 33 (8th Cir. 1983) (same). Third, the jury acquitted defendants on several phone counts, indicating that it independently assessed the content and meaning of each conversation.[8] Therefore, we determine that reversal is not warranted.

## II. Judgment of Acquittal

Johnson argues that the district court erred in denying his motion for judgment of acquittal. On appeal, we review the evidence in the light most favorable to the government, resolving evidentiary conflicts in its favor, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. See United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002). We uphold the jury's verdict if there is an interpretation of the evidence that would allow a reasonable jury to find defendant guilty beyond all reasonable doubt. Id.

Johnson was convicted of count thirty-seven of the fourth superseding indictment, which provided that:

> On or about June 10, 2005, in the Western District of Missouri, and elsewhere, [Johnson] did knowingly and intentionally use a communications facility (a telephone) to facilitate the commission of the

---

[8]Keith Rodebaugh was acquitted on two counts and Johnson was acquitted on one count of use of a telephone to facilitate a drug offense.

crimes of distribution and possession with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 2.

(Johnson Index at 60-61.) To sustain its burden of proof, the government had to prove beyond a reasonable doubt that Johnson (1) knowingly or intentionally (2) used a telephone (3) to facilitate the commission of a drug offense. See United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987). The government also had to show by a preponderance of the evidence that the underlying offense of knowingly or intentionally distributing and possessing with intent to distribute marijuana occurred. Id. Johnson maintains that the government presented no evidence to support the underlying offense.

At trial, the government introduced into evidence a recording of a June 10, 2005, phone call between Johnson and Keith Rodebaugh. During their conversation, Johnson asked whether Keith would be home "for a second right now." (Gov. Br. at 56; Trial Tr. at 382-83.) Keith responded, "Ah shh, yeah, I'm here. I mean it'd take ya . . . I'll have ta have someone fuckin' get those parts over here for ya, you know what I'm sayin'?" (Gov. Br. at 56; Trial Tr. at 382-83.) Johnson then asked whether that was something "you can do now?" and Keith responded, "It'll take a minute." (Gov. Br. at 56.) Immediately thereafter, Keith called Cavin and asked him to bring over "a couple packs of cigarettes." (Gov. Br. at 56; Trial Tr. at 382-83.) Keith later called Johnson and told him to "come on." (Gov. Br. at 56.) In addition to this call, the government presented four other recorded conversations wherein Johnson and Keith Rodebaugh discussed marijuana transactions, and three witnesses testified that Johnson regularly purchased significant quantities of marijuana from Keith Rodebaugh. (Trial Tr. at 75, 163, 194, 332-33.)

In light of Mattas's testimony about defendants' use of code words and jargon, as well as the evidence establishing Johnson's ongoing drug relationship with Keith Rodebaugh, a reasonable jury could have inferred that Johnson called Keith Rodebaugh on June 10, 2005, to obtain marijuana. Furthermore, a reasonable jury could have inferred that Keith Rodebaugh's request that Cavin "bring him a couple packs of cigarettes" was a request for marijuana, and that upon securing the drugs, Keith Rodebaugh immediately called Johnson to deliver the drugs to him. A reasonable jury thus could have concluded that Keith Rodebaugh knowingly distributed and possessed with intent to distribute marijuana, and that Johnson's phone call facilitated that offense. See United States v. Ward, 696 F.2d 1315, 1319 (11th Cir. 1983) ("A prima facie case [of a § 843(b) violation] need not include proof that the defendant [himself] committed the underlying offense."); United States v. Rey, 641 F.2d 222, 224 n.6, 227 n.10 (5th Cir. 1981) (burden of proof satisfied when defendant intentionally used telephone to facilitate another's commission of offense). Therefore, the evidence supports the jury's verdict, and we affirm.

## III.  Sentencing
### A.  Acquitted Conduct

Keith and Eugene Rodebaugh argue that the district court violated their rights to due process and a jury trial under the fifth and sixth amendments to the U.S. Constitution when it based their sentences on larger drug quantities than those specified by the jury in its special verdict. Defendants do not argue that the court's drug quantity determinations were clearly erroneous, but rather that the court impermissibly increased defendants' punishment by relying on acquitted conduct. We review constitutional challenges to sentences de novo. United States v. Carpenter, 487 F.3d 623, 625 (8th Cir. 2007); United States v. Gallimore, 491 F.3d 871, 875 (8th Cir. 2007).

When determining a defendant's sentence, a district court may consider "all drugs that the government shows by a preponderance of the evidence were a part of

the same course of conduct or common scheme as the conspiracy, even where the defendant was acquitted of such conduct." United States v. Gordon, 510 F.3d 811, 817 (8th Cir. 2007). It is well-established that this standard satisfies the constitutional guarantees of the fifth and sixth amendments. See United States v. Davis, 457 F.3d 817, 825 (8th Cir. 2006) (sixth amendment); United States v. Okai, 454 F.3d 848, 851-52 (8th Cir. 2006) (fifth amendment); see also United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005) (the court has "squarely rejected" the proposition that it is error for a district court to find drug quantity by a preponderance of the evidence at sentencing). Moreover, the amount of drugs specified by a jury in a special verdict form is not binding upon a district court at sentencing. See United States v. Webb, 545 F.3d 673, 677 (8th Cir. 2008) ("A district court may impose a sentence based on a drug quantity determination greater than that found by the jury."); United States v. Titlbach, 300 F.3d 919, 922 (8th Cir. 2002) (no error when district court based sentencing calculation on a greater quantity of drugs than specified in special verdict form); see also United States v. Washburn, 444 F.3d 1007, 1014 (8th Cir. 2006) (amount of loss reported by jury in special interrogatory not binding on court at sentencing). Therefore, the district court's drug quantity determinations did not violate the Rodebaughs' constitutional rights.

## B. Criminal History

Keith Rodebaugh also appeals the district court's calculation of his criminal history category, arguing that it improperly included his 1997 state conviction for possession of marijuana. "We review de novo the district court's construction and interpretation of the criminal history provisions of the sentencing guidelines, and we review for clear error the district court's application of the guidelines to the facts." United States v. Pando, 545 F.3d 682, 683 (8th Cir. 2008) (quotation omitted).

Under Guidelines § 4A1.1, a defendant receives criminal history points for each prior sentence. A "prior sentence" is "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." Guidelines

§ 4A1.2(a)(1). If the conduct is part of the instant offense, it is treated as relevant conduct and considered in the calculation of a defendant's offense level, not his criminal history category. See id. § 1B1.3(a). Relevant conduct includes "all acts . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Id. In contrast, prior criminal conduct that is severable and distinct is not relevant conduct. See United States v. Phelps, 536 F.3d 862, 868 (8th Cir. 2008). To make this factual determination, we consider several factors, including the "temporal and geographical proximity [of the offenses], common victims, common scheme, charge in the indictment and whether the prior conviction is used to prove the instant offense." United States v. Stone, 325 F.3d 1030, 1032 (8th Cir. 2003) (citations omitted).

In this case, the 1997 conviction occurred before the time period charged in the conspiracy. The 1997 offense was not included in the indictment, nor was evidence related to it presented at trial. Moreover, the 1997 conviction did not facilitate or further the instant conspiracy to distribute and possess with intent to distribute marijuana. For these reasons, the district court did not clearly err by using the 1997 conviction to determine Keith Rodebaugh's criminal history category.

The judgment of the district court is affirmed.

_____

-11-