# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3488

_____

United States of America,               *
                                        *

        Plaintiff-Appellee,      *

                                          *   Appeal from the United States

       v.                         *   District Court for the Eastern

                                          *   District of Missouri.

Leobardo B. Barraza,        *

                                          *

        Defendant-Appellant.    *

_____

Submitted: June 9, 2009
Filed:  August 17, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Leobardo B. Barraza of kidnapping Maria Eloiza and her five-year-old son, Jesus ("Alex") Ramirez, resulting in the deaths of both.  **18 U.S.C. §§ 1201(a)(1), 2**.  The district court[1] imposed a life sentence.  Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court affirms.

_____

[1]The Honorable Steven N. Limbaugh, Sr., United States District Judge for the District of Eastern Missouri, now retired, presiding at trial; the Honorable Steven N. Limbaugh, Jr., United States District Judge for the District of Eastern Missouri, presiding at sentencing.

## I.

Barraza, then age 16, worked with Eloiza at a store outside Chicago. Barraza and Jose Jesus Hernandez (a.k.a. "Chupacabras") invited her to travel to Mexico, with Alex, to bring drugs into the United States. Eloiza agreed, but told a niece that she was taking Alex to Disneyland.

Concerned about safety, Eloiza told a friend about the Mexico drug-trafficking plan. She also wrote an entry in a journal, dated August 20, 1998, which she left in her apartment. Translated from Spanish, it states: "I left to Mexico with Leo Barraza to a business. I'm taking my son. I'll be back Tuesday or Wednesday of next week. In case we get lost, look for us, please." The note provides Barraza's home phone number.

Around August 21, Barraza and Chupacabras picked up Eloiza and Alex. Barraza drove, eventually reaching an isolated wooded area in Franklin County, Missouri. There, according to Barraza's confession, he and Chupacabras raped Eloiza. Chupacabras strangled her to death. Barraza restrained Alex during his mother's murder; both men then repeatedly hit him on the head, killing him. Barraza and Chupacabras concealed the bodies at the murder site.

Barraza and Chupacabras returned to the Chicago area. Barraza told four friends about the Missouri murders, and left Eloiza's and Alex's possessions in plain view in his car.

Hunters discovered Eloiza's and Alex's remains in November 1998. Authorities arrested Barraza in 2006. He waived his *Miranda* rights and confessed. Chupacabras remains at large.

## II.

Barraza asserts the district court erred by not striking for cause Juror 43. "A district court's decision to remove or not remove a juror is reviewed for an abuse of discretion." *United States v. Cannon*, 475 F.3d 1013, 1023 (8th Cir.), *cert. denied*, 128 S.Ct. 365 (2007).

## A.

During voir dire, defense counsel asked prospective jurors whether "anything about the nature of the case or the photographs that you think would give you, you know, something you should bring to our attention, could be a problem sitting on this case?" Juror 43 stood up.

> Juror 43: Yes, sir. I have a three and five-year-old at home and I believe, as the other juror stated, the parent's responsibility to protect them. I'm not squeamish, I'm not afraid to see photographs. Never been put in this position before. I couldn't tell you how I would judge or not. I feel very strongly about that.
>
> Defense counsel: You mind if I ask you some questions along those lines? I'll be honest with you. Some of them you may have already heard from me, so let me start at beginning.
> So you have two young children?
>
> Juror 43: Yes.
>
> Defense counsel: Three and five and when you hear that one of the victims is a young child – that's why you raised your hand, I guess. That's why you're talking to me.
>
> Juror 43: Yes, sir.
>
> Defense counsel: Now the question is because of the nature of the evidence you may hear, is your personal life, the fact that you have children, going to have an effect on your ability to hear the case?
>
> Juror 43: As I said, it may. I've never been put in this position before.
>
> Defense counsel: I understand.

Juror 43: At this point I would try to be fair and judge the evidence but it might, I don't know. I couldn't honestly tell you. I couldn't stand here and tell you yes or no.

Defense counsel: You're saying you give it your best effort.

Juror 43: That's the best I could do.

Defense counsel: Listen to the evidence and follow the instructions of the Court?

Juror 43: That is true, but I have very strong feelings.

Defense counsel: But you feel very strongly where a child victim –

Juror 43: Yes, sir.

Defense counsel: That would have an effect on you –

Juror 43: Yes, sir.

Defense counsel: -- to the point where you wouldn't be able to follow the evidence?
I'm sorry, follow the Court's instruction?

Juror 43: I would follow the Court's instructions the best I could. I couldn't honestly tell you I couldn't set it aside. I mean I deal with the kids every day. I'm around them all the time.

Defense counsel: That's exactly why I asked the question because I'm sure everyone in the courtroom – we're parents, I'm a parent, that's why we ask these questions. Give you an opportunity to talk about it. We don't – I don't want to blindside you.
So you're saying it could possibly have an effect on you?

Juror 43: Yes, sir.

Defense counsel: You're affected, ability to hear the case.

Juror 43: Yes, sir.

Defense counsel: And I just want to make sure is – I don't want to misstate what you're telling me and I want to make sure we have it in the record.

Juror 43: I understand.

Defense counsel: Okay. All right. Thank you very much for talking with me.

Barraza moved to strike Juror 43 for cause. Before final selection of the jury, this exchange occurred between the court and defense counsel:

-4-

Defense counsel: Judge, I just want to make sure. [Juror] 43 was one our motions for cause that you took under submission, so I'm assuming that's – since you left him in, that's overruled?

The court: Yes. It was one and I – I'm more impressed with the government's position about that. I thought Ross, number 43, indicated he was concerned emotionally about the problem but that he could put that concern aside and decide the matter impartially, so I will overrule the challenge for cause as to 43.

B.

A defendant has a right to trial "by an impartial jury." **U.S. Const. amend. VI**. "Impartiality is presumed 'so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.'" *United States v. Evans,* 272 F.3d 1069, 1078 (8th Cir. 2001), *quoting **Lockhart v. McCree,*** 476 U.S. 162, 184 (1986). "The test for assessing impartiality asks whether the prospective juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *United States v. Wright*, 340 F.3d 724, 733 (8th Cir. 2003) (quotations and citations omitted). This court "will not overturn the district court's finding that a prospective juror can put aside any pretrial opinion and render a verdict based upon the evidence at trial unless the error is manifest." *United States v. Blom*, 242 F.3d 799, 805-06 (8th Cir. 2001) (quotations and citations omitted).

Barraza asserts that Juror 43 was not impartial, and that the district court erred by not striking him for cause, citing *United States v. Sithithongtham*, 192 F.3d 1119 (8th Cir. 1999). There, a juror testified that he "would probably give [law enforcement witnesses] the benefit of the doubt if something was questionable," but that "I could probably be fair and impartial." *Id.* at 1121. This court found the district court erred by not striking the juror for cause, but concluded it was not reversible error (as the defendant used one of his peremptory strikes to remove the biased juror). *Id.* at 1121, 1123. "'Probably' is not good enough." *Id.* at 1121. *See also **United States v. Nelson***, 277 F.3d 164, 201 (2d Cir. 2002) (district court erred by failing to strike a

juror who said "he 'would like to think' of himself as objective and able to give the defendants a fair trial," but "he '[h]onestly . . . [didn't] know' whether he could do so").

An initial impression about a case does not disqualify a juror if the district court accepts the juror's assurances that he or she will set aside any preconceived beliefs and follow the court's instructions. *See Blom*, 242 F.3d at 806 (affirming the district court's refusal to strike a juror for bias when the "court and counsel made the proper inquiry, and the issue is essentially one of demeanor and credibility").

In *United States v. Johnson*, this court reviewed voir dire testimony similar to that of Juror 43 in this case. *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007), *cert. denied*, 129 S.Ct. 32 (2008). There, the juror "stated that his empathy for the victim's family and the fact that the crime involved children could affect his judgments about the case." *Id.* at 964. This court affirmed the denial of the motion to strike the juror for cause. *Id.* "Although the juror gave some equivocal answers and acknowledged the possibility that his judgment could be affected by some aspects of the case, the district court concluded that juror 600 could be fair and impartial and that his statements reflected the 'reasonable self doubts' of a conscientious and reflective person." *Id.* (*Johnson* analyzed the challenged juror within the *Wainwright-Witt* death penalty framework. The court's finding of no error, however, was based on its conclusion that the voir dire transcript revealed no bias. *See id.*)

Here, Juror 43 described his sense of parental responsibility, stating that it may "possibly" affect his ability to hear the evidence in this case. Asked if he could "listen to the evidence and follow the instructions of the court," he said: "That is true, but I have strong feelings." Unlike the *Sithithongtham* juror, Juror 43 did not indicate that he would give greater weight to the testimony of government witnesses. The district court did not abuse its discretion by finding that Juror 43's testimony, in context, shows he could follow the court's instructions and set aside any initial impressions.

*See Johnson*, 495 F.3d at 964 ("Because the trial judge is in the best position to analyze the demeanor and credibility of a venireman, we will not reverse a court's rulings absent an abuse of discretion.").

### III.

Barraza challenges three pieces of evidence, asserting they are inadmissible hearsay, admitted in violation of the Sixth Amendment. "We review *de novo* the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling." *United States v. Allen*, 540 F.3d 821, 824 (8th Cir. 2008).

The district court admitted, over objection: (1) Eloiza's out-of-court oral statement, made to a niece, about her intention to travel to Disneyland with Alex; (2) Eloiza's out-of-court oral statements, made to a friend, about her intention to travel to Mexico with Barraza; and (3) an entry from the journal found in Eloiza's apartment, describing her intention to travel to Mexico with Barraza.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." **Fed. R. Evid. 801(c)**. "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." **Fed. R. Evid. 802**. Some hearsay statements are admissible as exceptions to the hearsay rule, under Rule 803, since they possess circumstantial guarantees of trustworthiness. *See* **Fed. R. Evid. 803 advisory committee's note** ("The present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available.").

The district court admitted the three items under Rule 803(3), which excludes from the definition of inadmissible hearsay:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**Fed. R. Evid. 803(3)**.

The first challenged statement is Eloiza's out-of-court remark, made to a niece, that she was taking Alex to Disneyland. The government did not introduce this statement to prove that Eloiza intended to take Alex to Disneyland. Rather, the government introduced it to show that she attempted to deceive her family about the drug-trafficking trip to Mexico. The statement was not introduced to prove the truth of the matter asserted, and therefore is not hearsay. **Fed. R. Evid. 801(c)**. It is admissible without regard to Rule 803(3). *See **United States v. Aponte***, 31 F.3d 86, 88 (2d Cir. 1994) ("fabricated statement and false descriptions were not offered for the truth of the matter asserted and therefore were not hearsay," but were instead "offered to show . . . capacity for deception").

Eloiza's out-of-court statements to the friend and the journal entry contain assertions that she intended to take a trip to Mexico with Barraza. The government introduced the statements to prove the truth of these assertions. They are inadmissible hearsay, unless an exception applies. **Fed. R. Evid. 801(c)**; **Fed. R. Evid. 802**.

Barraza does not challenge the district court's ruling that the two statements are non-testimonial. He contends, however, citing the timing of the statements, that they do not come within Rule 803(3). Barraza asserts that Eloiza made the oral statements

several days, if not weeks, before her departure, and that the circumstances of the journal entry's authorship are unknown.

The friend testified that Eloiza discussed the proposed trip to Mexico with her several times in August 1998. The friend gave birth on August 10, and "after I had came home from the hospital, we had had conversations a few days before and then during the time, she started talking seriously about a trip that she was going to make." Telephone records show two calls between Eloiza and the friend on August 20, one lasting 29 minutes, the other six minutes. Eloiza and Alex departed with Barraza and Chupacabras around August 21.

"A key circumstantial guarantee of trustworthiness in respect to Rule 803(3) is that it requires that statement be contemporaneous with the declarant's 'then existing' state of mind, emotion, sensation, or physical condition." *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005). Here, Eloiza told her friend on August 20, the day before leaving, that she intended to travel to Mexico with Barraza. These statements — contemporaneous with Eloiza's then-existing state of mind — are within Rule 803(3). *Cf. id.* at 722-23 (defendant's statement of belief about the victim's age, made the day *after* meeting the victim online, was not contemporaneous with the defendant's then-existing state of mind when he met the victim).

The journal entry is dated August 20. In it, Eloiza states her intention to travel to Mexico on "business" with Barraza. The journal was found in Eloiza's room, which she locked when leaving on the trip with Barraza. This written statement is contemporaneous with her then-existing state of mind, irrespective of whether Eloiza wrote it on the exact day of her departure or a few days before. *See Mutual Life Ins. Co. of New York v. Hillmon*, 145 U.S. 285, 294-95 (1892) (two letters, one dated "a day or two before" the other, were admissible as evidence of declarant's then-existing intention to travel with third party). *See also* **Fed. R. Evid. 803(3) advisory committee's note** ("The rule of *Mutual Life Ins. Co. v. Hillmon,* allowing evidence

of intention as tending to prove the doing of the act intended, is, of course, left undisturbed [by Rule 803(3)].") (citation omitted).

Barraza also asserts that, even if these non-testimonial statements fall within Rule 803(3), they are not supported by adequate indicia of reliability, and thus should have been excluded. He relies on *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) (holding that, under the Confrontation Clause of the Sixth Amendment, an unavailable declarant's "statement is admissible only if it bears adequate 'indicia of reliability.'"). This argument is foreclosed by precedent. ***United States v. Honken***, 541 F.3d 1146, 1161 (8th Cir. 2008), *petition for cert. filed* (May 7, 2009) (No. 08-10252) ("[N]on-testimonial statements, 'while subject to traditional limitations upon hearsay evidence, *[are] not subject to the Confrontation Clause.*'"), *quoting **Davis v. Washington***, 547 U.S. 813, 821 (2006).

IV.

Barraza asserts that the federal kidnapping statute, 18 U.S.C. § 1201, is unconstitutionally vague and overbroad. This court reviews de novo constitutional challenges and questions of statutory interpretation. ***United States v. May***, 535 F.3d 912, 915 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 2431 (2009).

A.

"A penal statute is unconstitutionally vague if it fails to 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" ***United States v. Orchard***, 332 F.3d 1133, 1137-38 (8th Cir. 2003), *quoting **Kolender v. Lawson***, 461 U.S. 352, 357 (1983). "To defeat a vagueness challenge, a penal statute must pass a two-part test: The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary

enforcement." *United States v. Berger*, 553 F.3d 1107, 1110 (8th Cir. 2009), *petition for cert. filed* (Jun. 23, 2009) (No. 09-5318).

The federal kidnapping statute provides:

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;
. . .

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

**18 U.S.C. § 1201(a)**.

"General principles of statutory construction provide that we look to the structure of the statute and the language surrounding the term to ascertain its meaning." *United States v. Kowal*, 527 F.3d 741, 746 (8th Cir.), *cert. denied*, 129 S.Ct. 612 (2008). Barraza's argument focuses on a single clause of the statute — "if

the death of any person results."[2]  First, he contends the term "results" allows a defendant to be convicted for deaths that are indirect or unforeseeable consequences of the kidnapping.  Second, he argues that the term "of any person" allows a defendant to be convicted for any death connected to the kidnapping, not just that of the kidnapping victim.

"A vagueness challenge to [a] statute which does 'not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'"  **Orchard**, 332 F.3d at 1138, *quoting* **United States v. Mazurie**, 419 U.S. 544, 550 (1975).  Here, the jury instructions interpreting § 1201(a) provided:

> The crime of kidnaping, as charged in count I of the indictment, has four essential elements, which are:
> 1. The defendant Leobardo Barraza and others voluntarily and intentionally decoyed, inveigled, seized, confined, kidnaped, or carried away Maria Eloiza or Jesus Ramirez;
> 2. Maria Eloiza or Jesus Ramirez were thereafter transported in interstate commerce while so decoyed, inveigled, seized, confined, kidnaped or carried away;
> 3. Maria Eloiza or Jesus Ramirez were so decoyed, inveigled, seized, confined, kidnaped, or carried away for the purpose of murder; and
> 4. In the course of the kidnaping, the deaths of Maria Eloiza or Jesus Ramirez resulted.

---

[2]In his Reply Brief, Barraza argues, for the first time, that the clause "ransom, reward or otherwise" is vague because it "could be read to include any purpose whatsoever."  Arguments raised for the first time in a Reply Brief need not be addressed. **United States v. Chalupnik**, 514 F.3d 748, 752 n.1 (8th Cir. 2008).  At any rate, this clause of the statute is not vague or overbroad.  This court examines the statute in light of the facts of the case at hand. **Orchard**, 332 F.3d at 1138.  Here, the instructions required the jury to find that Barraza kidnapped Eloiza and Alex "for the purpose of murder."

To convict Barraza, the instructions required the jury to find that he intentionally kidnapped Eloiza or Alex, in interstate commerce, for the purpose of murder, and that the victims died as a result of the kidnapping. The "resulting" deaths were not those of indirect or unforeseeable bystanders, but of the kidnapping victims. Likewise, the instruction required the jury to find that Eloiza or Alex died in the kidnapping, not "any person" unconnected to the kidnapping. The statute, as applied in this case, provides adequate notice of the proscribed activity and does not risk arbitrary enforcement. *Berger*, 553 F.3d at 1110.

B.

Barraza also claims the federal kidnapping statute, as applied here, is overbroad. He asserts the instructions, quoted above, should have required the government to prove not only that Barraza voluntarily and intentionally kidnapped Eloiza and Alex, but also that he voluntarily and intentionally caused their deaths.

The statute does not require that the deaths result from voluntary and intentional conduct, only that "the death of any person results" in the course of the kidnapping. **18 U.S.C. § 1201(a)**. This court addressed a similar argument in *United States v. McIntosh*, 236 F.3d 968 (8th Cir. 2001). Under a federal narcotics statute, a defendant may receive a higher sentence "if death or serious bodily injury results from the use of" a prohibited substance. *Id.* at 972, *quoting* **21 U.S.C. § 841(b)(1)(A)**. The *McIntosh* defendant asserted the government should have to prove that death or serious bodily injury was reasonably foreseeable to the defendant. *Id.* at 971. This court rejected this argument:

> From the statute's language, it is clear Congress intended to expose a defendant to a more severe minimum sentence *whenever* death or serious injury is a consequence of the victim's use of a controlled substance that has been manufactured or distributed by that defendant. We decline to

-13-

hinder Congress's will, apparent from the face of the statute, through a judicial pronouncement that the statute requires more than it says.

*Id.* at 972.

Here, following the statute's language, the jury instructions required the government to prove Barraza voluntarily and intentionally kidnapped Eloiza and Alex. The statute authorizes a higher punishment "if the death of any person results." **18 U.S.C. § 1201(a)**. The statute does not require proof that Barraza voluntarily and intentionally caused the resulting deaths.

V.

Barraza asserts that a sentence of life imprisonment is unconstitutionally disproportionate, given his age at the time of the offense and the facts of the crime.[3] This court reviews de novo constitutional challenges. *United States v. Rodebaugh*, 561 F.3d 864, 870 (8th Cir. 2009), *petition for cert. filed* (Jul. 7, 2009) (09-5218).

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." **U.S. Const. amend. VIII**. "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). "The Amendment proscribes 'all excessive punishments . . . .'" *Kennedy v. Louisiana*, 128 S.Ct. 2641, 2649 (2008), *quoting Atkins v. Virginia*, 536 U.S. 304, 311 n.7 (2002).

---

[3]Barraza frames his challenge as an attack on a sentence of "life imprisonment without the possibility of parole," as opposed to "a simple sentence of life." Congress abolished parole for federal sentences in 1984. **Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 2027, tit. II, ch. II, § 218(a)(5)**, *repealing* **18 U.S.C. § 4205(a)** ("a prisoner shall be eligible for release on parole after serving . . . ten years of a life sentence"). This court construes Barraza's challenge as an attack on a sentence of life imprisonment.

> In determining whether a sentence is grossly disproportionate, we first compare the gravity of the offense committed to the harshness of the penalty imposed. In evaluating the gravity of the offense, we consider the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant. We evaluate the culpability of the defendant by looking at the defendant's intent and motive in committing the crime. If the penalty appears grossly disproportionate given the offense, we then compare the sentence with sentences imposed on other criminals in the same jurisdiction and the sentences imposed for violations of the same crime in other jurisdictions.

*Ramos v. Weber*, 303 F.3d 934, 937 (8th Cir. 2002) (quotations and citations omitted).

Barraza was convicted of interstate kidnapping, resulting in the deaths of two people. **18 U.S.C. § 1201(a)**. Although Barraza was 16 at the time, he played a central role in the crime. He persuaded Eloiza to take the trip, raped her, restrained Alex during her murder, and beat a five-year-old child to death. He concealed the victims' bodies, and bragged about the killings. A sentence of life imprisonment is not grossly disproportionate under these circumstances. *See Roper v. Simmons*, 543 U.S. 551, 560 (2005) (affirming state sentence of "life imprisonment without eligibility for probation, parole, or release except by act of the Governor" when defendant committed murder at age 17); *Simmons v. Iowa*, 28 F.3d 1478, 1483 (8th Cir. 1994) ("We conclude that the Iowa mandatory sentence of life imprisonment without parole is not grossly disproportionate to Simmons's crime of aiding and abetting the restraint and torture of her seven-year-old child."); *Hatter v. Iowa Men's Reformatory*, 932 F.2d 701, 702-703 (8th Cir. 1991) (state sentence of life imprisonment without possibility of parole did not violate the Eighth Amendment when defendant kidnapped and raped victim but released her alive).

VI.

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

Barraza has a fundamental right to a trial by a fair and impartial jury. <u>See</u> U.S. Const. amend. VI; <u>Matthews v. Lockhart</u>, 726 F.2d 394, 397 (8th Cir. 1984). Because I believe this right was violated, I respectfully dissent.

A juror is considered to be impartial "only if he can lay aside his opinion and render a verdict based on the evidence presented in court . . . ." <u>Patton v. Yount</u>, 467 U.S. 1025, 1037 n.12 (1984); <u>see also</u> <u>United States v. Wright</u>, 340 F.3d 724, 733 (8th Cir. 2003). As the majority correctly recites, "[a]n initial impression about a case does not disqualify a juror if the district court accepts the juror's assurances that he or she will set aside any preconceived beliefs and follow the court's instructions." <u>Ante</u> at 6 (citing <u>United States v. Bliss</u>, 242 F.3d 799, 806 (8th Cir. 2001)).

I am at a loss, however, to see where in this record Juror 43 ever assured the district court that he would set aside his opinion and serve impartially and fairly. Juror 43 repeatedly stated he was unsure if he could set aside his views and serve fairly and impartially: "I couldn't tell you how I would judge or not. I feel very strongly about that."; "At this point I would try to be fair and judge the evidence but [my personal life, the fact I have children,] might [affect me], I don't know. I couldn't honestly tell you. I couldn't stand here and tell you yes or no."

Not once did Juror 43 affirmatively state he could or would serve fairly and impartially. In concluding otherwise, the majority mischaracterizes the record. In the section relied upon by the majority, Juror 43 was not "asked if he could listen to the evidence and follow the instructions of the court." <u>Ante</u> at 6. He was in fact asked whether he would give it his "best effort" to listen to the evidence and follow the

-16-

instructions of the court, to which he responded: "That is true, <u>but</u> I have very strong feelings." (Emphasis added.) Significantly, at the conclusion of the dialogue, where defense counsel attempted to make the record clear by asking Juror 43 if his ability to fairly and impartially judge the case was affected, Juror 43 responded, "Yes, sir." Juror 43 could not have been more clear that he was unable to serve fairly and impartially.

This is not the typical case where a juror expresses reservations and then opposing counsel or the district court rehabilitate him and the juror eventually unequivocally states he will serve fairly and impartially. <u>See</u> <u>United States v. Blom</u>, 242 F.3d 799, 805-06 (8th Cir. 2001) (holding the district court did not abuse its discretion by failing to strike for cause a juror who, although she admitted she had followed pre-trial media accounts about the case, repeatedly stated she could put aside any impressions and opinions gained from the pretrial publicity and reach a verdict based only upon the evidence presented at trial).

Had the district court pushed Juror 43 and the juror finally given unequivocal assurances of fairness and impartiality that the court found credible, I likely would not object to the district court's decision not to strike Juror 43 for cause because of the deference typically accorded the district court in assessing juror credibility. The district court, however, made no such effort to rehabilitate Juror 43. Indeed, the district court specifically noted its failure to rehabilitate Juror 43:

> I almost asked some follow up questions but decided not to do it and it appeared to me that [Jurors 4, 5, 12, 23, and 43] had ignored my admonition that this defendant is presumed to be innocent and that they were prejudging him simply because a minor was involved and the factual situation was difficult and I was going to follow up with the question, "Are you saying that you could not be impartial in this case simply because there's a minor involved even though you haven't heard the evidence?" That would have been a good question but I didn't do it . . . .

-17-

Because Juror 43 was never rehabilitated, there is no basis for deference to the district court.

This case is like <u>United States v. Sithithongtham</u>, 192 F.3d 1119 (8th Cir. 1999). In <u>Sithithongtham</u>, two jurors were questioned about their ability to fairly judge the testimony of a police officer. <u>Id.</u> at 1121. When asked whether their opinion of police officers would affect their ability to be fair and impartial, one juror stated, "I would probably give them the benefit of the doubt if something was questionable." <u>Id.</u> The other juror stated, "I'm sure I could probably be fair and impartial." <u>Id.</u> This Court held the district court abused its discretion by not striking these two jurors for cause:

> A juror who "would probably give [law enforcement officers] the benefit of the doubt," is not what we would consider impartial. Nor is a juror who "could probably be fair and impartial." "Probably" is not good enough.

<u>Id.</u>; <u>see also</u> <u>United States v. Nelson</u>, 277 F.3d 164, 201 (2d Cir. 2002); <u>Thompson v. Altheimer & Gray</u>, 248 F.3d 621 (7th Cir. 2001); <u>United States v. Gonzalez</u>, 214 F.3d 1109, 1114 (9th Cir. 2000).

Juror 43's replies during voir dire in this case present an even stronger case for a lack of impartiality than the replies at issue in <u>Sithithongtham</u>: rather than "probably," he affirmatively stated his ability to hear the case was affected. And there was no subsequent rehabilitation. Thus, the district court abused its discretion by not striking Juror 43 for cause. I therefore dissent.

_____