# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2374

_____

United States of America

*Plaintiff - Appellee*

v.

Joseph Hilton Dierks, also known as Joey Dierks, also known as @JosephDierks

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: September 26, 2019
Filed: October 21, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Joseph Dierks was convicted of three counts of transmitting a threatening communication in interstate commerce, 18 U.S.C. § 875(c), based on a series of tweets he directed at United States Senator Joni Ernst. On appeal, he argues that

there was insufficient evidence to convict him. He also says that the district court[1] improperly instructed the jury, erred in admitting testimony from a law enforcement officer about the meaning of his tweets, and erred by preventing him from introducing one of his tweets into evidence. We affirm.

## I.

On August 15, 2017, the United States Capitol Police started an investigation into threatening tweets that @JosephDierks—a Twitter account controlled by Dierks—tweeted at Senator Ernst. They asked Waterloo, Iowa police to check on him and tell him to stop the threatening tweeting. A Waterloo officer confirmed that Dierks sent the tweets and she warned him that if he continued he might be charged with a crime. Dierks said that he had been trying to get Senator Ernst's attention because he wanted her help to join the Navy. He promised he would "tone it down."

Dierks did not "tone it down." The next day he sent a series of tweets at Senator Ernst's accounts, including the three charged in his indictment:

- u r sn army bitch and I'll @USMC u tf up :)(:
- I'll f u up seriously in my sleep[2]
- I'll beat ur ass in front of ur widow I promise that

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

[2]This tweet was part of a thread that reads: "@joniernst I'll f u up seriously in my sleep U sent ur enforcers my police and that showed me how u can't control this situation Send em again ask the @USMC IF IM READY! I don't have a heart for u or any bitch ask her cuz u have no clue U think I'm playing…"

Two days later, FBI Special Agents Thomas Reinwart and Scott Irwin interviewed Dierks. During their discussion, which did not focus specifically on the three charged tweets, Dierks admitted that his tweets could be interpreted as threatening.

The Government charged Dierks with violating 18 U.S.C. § 875(c), which makes it a crime to transmit in interstate commerce "any communication containing any threat . . . to injure the person of another." At trial, in addition to the charged tweets, the Government introduced other tweets that Dierks sent around the same time and Agent Irwin testified about the meaning of some of the tweets. Dierks unsuccessfully tried to introduce another tweet that he thought was exculpatory.

The jury convicted Dierks on all three counts and the district court sentenced him to 72 months in prison.

II.

Dierks first claims there was insufficient evidence to prove that his tweets were "true threats" and not protected by the First Amendment. We review sufficiency of the evidence challenges *de novo*.[3] *United States v. Birdine*, 515 F.3d 842, 844 (8th Cir. 2008). We view the record in favor of the verdict and resolve evidentiary conflicts accordingly, giving all reasonable inferences to the verdict. *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014).

A "true threat" is a "statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc).

---

[3]The Government argues that we should review this claim for plain error because Dierks failed to renew his motion for judgment of acquittal at the close of evidence. The record says otherwise. Trial Tr. 124:10–12.

"[T]o decide whether there is sufficient evidence from which the jury can find that a reasonable recipient would interpret a communication as a threat, the communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made." *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011) (citation omitted).

Dierks argues his tweets were political statements that, in context, could not be understood as threatening. It is true that we distinguish "political hyperbole" from true threats. *Watts v. United States*, 394 U.S. 705, 708 (1969); *see also id.* (when assessing threatening statements we must account for our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials" (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))). But political context alone will not excuse a threat. *See United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993).

Dierks claims he wanted Senator Ernst's help to join the Navy. Although some of his tweets reference the armed forces (e.g., "u r sn army bitch and I'll @USMC u tf up :)(:"), the language he used is not the sort of overstated political hyperbole to which we give wide berth. *See, e.g.*, *Watts*, 394 U.S. at 706 (draft protester could not be prosecuted for saying, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."). Threatening communications that are not conditional, not clearly political in context, and do not "in any sense contribute to the values of persuasion, dialogue, and the free exchange of ideas," are true threats and fall outside of the First Amendment's protection. *Bellrichard*, 994 F.2d at 1322.

Dierks's tweets have no readily apparent political valence and the context of the dozens of other tweets Dierks directed at Senator Ernst intensifies their threatening message. On the same morning he sent the charged tweets, Dierks also

sent tweets that read: "@joniernst I'll flatline ur ass like @tendoublezero lol," "@senjonernst [sic] i want u to die sorry not sorry," "@SenJoniErnst I'll end u cuz u think u r a man," and "@SenJoniErnst @TENdoubleZERO Ur a bitch deserving death I ask for life." D. Ct. Dkt. 56-7. Alleged political motivation does not overcome this threatening context.

Dierks next argues that his tweets could not be true threats because they do not make sense. The "true threat" doctrine only requires that a jury find that a defendant's statement was serious, not literal or even intelligible. *See Virginia v. Black*, 538 U.S. 343, 359 (2003). Even if "a person expresses himself in an outlandish, illogical manner," his statements can be seriously threatening. *United States v. Mitchell*, 812 F.2d 1250, 1256 (9th Cir. 1987), *overruled on other grounds by Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1068–70 (9th Cir. 2002) (en banc). Dierks's tweets communicate, with varying degrees of clarity, a desire to hurt Senator Ernst. That it is not perfectly clear what it means to "USMC someone up" does not render the message of harm ambiguous.

Finally, Dierks argues that the Government never proved he transmitted the tweets "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015). We disagree. Dierks was warned before tweeting that his tweets were threats and he later admitted his tweets could be viewed that way. Dierks stresses that he only admitted that his tweets *could* be viewed as threats, not that he knew they *would* be viewed that way. However, a jury "can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond v. United States*, 572 U.S. 65, 78 n.9 (2014). Dierks's admission, the threatening content of his tweets, and the warning from the Waterloo police officer were enough to allow a reasonable jury to find that he intended his tweets as threats or knew they would be viewed that way. *See United States v. Wynn*, 827 F.3d 778, 785–86 (8th

Cir. 2016) ("It is well established that a jury may infer intent from circumstantial evidence.") (citation omitted).

## III.

The district court instructed the jury that, for each charged tweet, it must find (1) "the defendant knowingly transmitted a communication in interstate commerce," (2) "the communication contained a threat to injure another person," and (3) "the defendant intended the communication to be threatening and/or knew it would be considered threatening." D. Ct. Dkt. 55 at 12–14. Dierks finds three errors in these instructions. We review for abuse of discretion and will reverse only if the abuse was not harmless.[4] *United States v. Parker*, 871 F.3d 590, 604 (8th Cir. 2017); *United States v. Dvorak*, 617 F.3d 1017, 1026 (8th Cir. 2010).

First, Dierks argues that the district court should have done more to define "threat" for the jury, making it clear that the statute punishes "serious threat[s]—not idle talk, a careless remark, or something said jokingly." D. Ct. Dkt. 43. Although we have affirmed cases where the district court provided a more extensive explanation of the term, we have never required such an instruction. *See, e.g.*, *United States v. Koski*, 424 F.3d 812, 820 (8th Cir. 2005). Dierks argues that omitting the proposed explanation precluded him from arguing that his tweets were cries for attention not to be taken seriously. This claim—that he did not intend his threats to be read seriously—is a different way of saying that Dierks lacked the necessary *mens rea* to violate § 875(c). But, as discussed below, the district court adequately

---

[4]The Government makes another bad argument about our standard of review, claiming Dierks failed to object to the court's instructions. The record contradicts this claim too. Dierks twice filed written objections to the district court's proposed instructions, D. Ct. Dkt. 43, 46, and the district court acknowledged the objections at trial, s*ee* Trial Tr. 6–7.

instructed the jury on the *mens rea* requirement of the statute. In order to find him guilty, the jury must have determined Dierks intended to do more than seek attention.

Second, Dierks argues that the final element of the jury instructions—the *mens rea* element—should have required the jury to find that he either intended to threaten another person or knew his tweets would be viewed as a threat *by a reasonable person.* D. Ct. Dkt. 43. The Supreme Court has clarified that § 875(c) contains an implicit *mens rea* requirement that "is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 135 S. Ct. 2001, 2012 (2015). An instruction requiring Dierks to have "knowledge that the communication will be viewed as a threat *by a reasonable person*," misstates the *mens rea* standard applicable to § 875(c) cases, so the district court did not abuse its discretion by rejecting it.

Finally, Dierks argues that the second element of the jury instructions should have read: "*a reasonable person* would view the communication as an objective threat to injure another person." Trial Tr. 7 (emphasis added). We have held that a conviction under § 875(c) "requires the government to prove a reasonable recipient would have interpreted the defendant's communication as a serious threat to injure," but we did so because we considered § 875(c) to be a general intent crime that did not require that the defendant intended to threaten. *United States v. Nicklas*, 713 F.3d 435, 440 (8th Cir. 2013).

*Elonis* significantly undercut *Nicklas* by establishing that § 875(c) is a specific intent crime. Now, the key question for *mens rea* is whether the defendant "trasmit[ted] a communication for the purpose of issuing a threat or with knowledge that the communication [would] be viewed as a threat." *Elonis*, 135 S. Ct. at 2012. *Nicklas* no longer provides a rationale for requiring a jury to find that a threat would appear as such to a "reasonable person."

That does not mean that the "reasonable person" has no place in § 875(c) cases. It continues to be a necessary part of our "true threat" analysis. *Elonis* did not alter the requirement that prosecutions target only "true threats." This requirement is satisfied by an *objective* finding that a reasonable person would have been threatened by the charged communication. *See Mabie*, 663 F.3d at 332–33; *see also United States v. Elonis*, 841 F.3d 589, 596 (3rd Cir. 2016) (finding § 875(c) retains an objective component).

We conclude that the district court should have required both a subjective finding of knowledge or intent and also an objective finding that the communication was threatening. *See United States v. Jeffries*, 692 F.3d 473, 485 (6th Cir. 2012) (Sutton, J., *dubitante*). Nevertheless, because his tweets were objectively threatening, we believe it is clear beyond a reasonable doubt that a rational jury would have found Dierks guilty absent that error. *See Dvorak*, 617 F.3d at 1024–25. The error was harmless.

## IV.

Finally, Dierks raises two evidentiary challenges. First, he argues that the district court erred by admitting testimony from a law enforcement officer about the meaning of his tweets. Second, he claims it improperly excluded a tweet that he thinks is exculpatory. We review both decisions for an abuse of discretion. *United States v. Beasley*, 688 F.3d 523, 533 (8th Cir. 2012); *United States v. Suhl*, 885 F.3d 1106, 1116 (8th Cir. 2018).

## A.

Special Agent Irwin testified at trial about the meaning of Dierks's tweets. Dierks argues that Agent Irwin offered improper lay-opinion testimony because he

explained that when Dierks wrote "tf," he meant "the fuck," "f u up" meant "fuck you up," and that capital letters meant a raised voice.

Lay testimony is admissible under Federal Rule of Evidence 701 if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Dierks argues that Agent Irwin's testimony was not rationally based on his perception but was instead expert testimony.

We have been skeptical of lay testimony from law enforcement officers "interpreting" evidence. In *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001), we ordered a new trial after a police officer testified at length regarding the "hidden meanings for apparently neutral words" in recorded conversations. *Id.* at 640. For example, the officer testified that when one defendant told another that they should "buy [] a plane ticket" for someone, he was really suggesting that they kill the person. *Id.* We explained such testimony is admissible under Rule 701 "only when the law enforcement officer [was] a participant in the conversation, ha[d] personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *Id.* at 641.

The district court did not abuse its discretion in admitting Agent Irwin's testimony because it differed from the testimony in *Peoples*. First, the officer in *Peoples* testified about meanings that were intentionally hidden from all but the participants in the conversation. Agent Irwin explained common abbreviations and syntax that Dierks probably thought would be understood by anyone with a Twitter account. *See Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 262 n.3 (5th Cir. 2019) (explaining that "'lmao' stands for 'laughing my ass off'"). Second, unlike the testimony in *Peoples*, Agent Irwin's testimony was not used by the Government to provide a "narrative gloss" on the facts of the case. *See Peoples*, 250

F.3d at 640. Third, Agent Irwin's testimony was "about facts within [] his range of generalized knowledge, experience, and perception," *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (citation omitted). Agent Irwin testified that his familiarity with internet slang came from having a Facebook account, texting his children, and occasionally consulting Urban Dictionary.[5]

Even if there was an abuse of discretion, it was harmless. *See United States v. Manning*, 738 F.3d 937, 942 (8th Cir. 2014). Unlike cases where we have found harmful error because a witness's testimony laid out the Government's case or offered the prosecutor's conclusions in the form of opinion testimony, *see Peoples*, 250 F.3d at 642, Agent Irwin defined a few abbreviations for the jury. Because the jurors were probably already familiar with the abbreviations, nothing he said would have had "more than a slight influence on the jury's verdict." *Manning*, 738 F.3d at 942.

B.

Dierks attempted to introduce a tweet he sent after he spoke with the Waterloo officer (the day before the charged tweets). It read: "So the cops came by asking about Twitter. I share videos and make comedic comments. Nothing to be Afraid of. LMAO." The district court excluded the tweet as hearsay. Dierks argues it was admissible under Federal Rule of Evidence 803(3), which allows the admission of "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."

The "circumstantial guarantee of trustworthiness" that makes a statement admissible under Rule 803(3) "is that it requires [a] statement be contemporaneous

---

[5]Dierks argues that Agent Irwin's reference to Urban Dictionary creates a hearsay problem. But Irwin only referenced Urban Dictionary once and Dierks does not challenge that portion of his testimony.

with the declarant's 'then existing' state of mind . . . . [S]ubstantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005) (citation omitted). As a result, we exclude evidence if the defendant had "time to reflect" on his situation before making the statement. *Id.* This tweet was sent, not tagging Senator Ernst, on the morning of August 15—roughly 18 hours before Dierks sent the charged tweets.[6] That is not contemporaneous enough with his charged tweets, *id.*, and the district court did not abuse its discretion by excluding it.

For the foregoing reasons, we affirm Dierks's conviction.

_____

---

[6]There was some confusion at trial regarding the exact timeline—no one was certain what time zone the time stamps on the PDF versions of the tweets referred to. According to those time stamps, this tweet was sent at 9:53 a.m. The charged tweets were sent around 4:00 a.m. the next day.