# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1335

_____

United States of America

*Plaintiff - Appellee*

v.

Cody Ray Leveke, also known as Cody Meyer, also known as Cody Ray Meyers

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 14, 2022
Filed: June 21, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Following a series of trial delays due to the COVID-19 pandemic, a jury convicted Cody Leveke of two counts of interstate communication of a threat, in

violation of 18 U.S.C. § 875(c). The district court[1] sentenced him to a term of 60 months in prison. Leveke appeals and we affirm.

## I.    BACKGROUND

Leveke, a registered sex offender, spent the better part of a decade trying to be removed from the Iowa sex offender registry. In 2009, Iowa State Senator Herman Quirmbach agreed to try and help Leveke, who was then residing in Arizona. Senator Quirmbach repeatedly introduced bills to amend the law to allow out-of-state offenders the same opportunity as in-state offenders to petition for removal from the Iowa registry; however, his efforts were unsuccessful.

On September 3, 2019, Leveke sent Senator Quirmbach two emails with the subject line, "Mass Shooting of the Iowa Legislature," and left a voicemail on the senator's home phone. In his first email, Leveke complained about law enforcement unfairly targeting him and an invalid law being "still on the books." He wrote, "I'm angry enough to pull a mass shooting down at the State House." Leveke asserted the legislature was in violation of the Constitution and requested an explanation for the "illegal behavior" as well as the names of those responsible for "holding the bill up." He told Senator Quirmbach that those responsible "should live in fear."

About an hour later, Senator Quirmbach received an angry voicemail on his home phone from Leveke. Among other things, Leveke told Quirmbach that the senator could not violate the Constitution and get away with it. Concerned by the email and voicemail, Senator Quirmbach immediately notified law enforcement and the senate minority leader's office. Legislative administrative staff member, Debbie Kattenhorn, then informed the entire Iowa Legislature and capitol security about Leveke's messages.

---

[1]The Honorable John A. Jarvey, then Chief Judge, United States District Court for the Southern District of Iowa, now retired.

That evening, Senator Quirmbach received a second email from Leveke under the same subject line of "Mass Shooting of the Iowa Legislature." This time, Leveke "order[ed]" the "Iowa Legislature to stand down with any attempts to violate the civil rights of anyone" and demanded that the existing law be taken off the books. He wrote that he believed the Second Amendment exists "so we can kill politicians" for not acting in accordance with the law. Leveke further stated that "the legislature deserves a violent response at this point." He also attached an article about a mass shooting in Texas that had been reported just hours before.

Leveke was indicted with two counts of interstate communication of a threat, in violation of 18 U.S.C. § 875(c). The course of the prosecution was impacted by the COVID-19 pandemic. Leveke's trial, originally set for March 30, 2020, in the Central Division of the Southern District of Iowa, was cancelled on March 16, 2020, when the court issued an administrative order postponing all jury trials in the Southern District of Iowa from March 16, 2020, until May 4, 2020, on ends of justice grounds related to the pandemic and attendant health risks. See U.S. Dist. Court for the S. Dist. of Iowa, Pub. Admin. Order No. 20-AO-3-P (Mar. 16, 2020) (citing 18 U.S.C. § 3161(h)(7)(A)).

While Leveke made a number of *pro se* requests to have his case proceed to trial, the relief he was seeking was not entirely plain. At one point, he moved for a bench trial while reserving his right to a jury trial. During a status conference, Leveke demanded a jury trial. Subsequently, he consented to a bench trial but conditioned his consent upon certain circumstances and simultaneously insisted on preserving his right to a jury trial. A couple months later, Leveke indicated he wanted a bench trial but refused to waive his right to a jury trial. Leveke requested his case be moved to another division that was conducting jury trials. Ultimately, the district court transferred Leveke's case to the Eastern Division and ordered a jury trial to commence on September 29, 2020.

Leveke's jury trial took place on September 29, 2020. Pursuant to a series of administrative orders, no jury trials were allowed in the Central Division—where

Leveke's case was originally set to take place—until October 12, 2020. See, e.g., U.S. Dist. Court for the S. Dist. of Iowa, Pub. Admin. Order No. 20-AO-19-P (Sept. 3, 2020). The court, after consulting with the United States Attorney, Federal Public Defender, and others, agreed the delay was proper given that "the number of new cases of COVID-19 in the Central Division ha[d] risen to the highest levels to date." Id. Each time the court delayed Leveke's jury trial, it found the time was excludable under the Speedy Trial Act.

The jury found Leveke guilty, and he was sentenced to a term of 60 months' imprisonment. Leveke appealed and the clerk appointed counsel to represent him.

## II.   DISCUSSION

### 1.   Sufficiency of the Evidence

At trial, Senator Quirmbach and Kattenhorn testified that they believed Leveke's messages posed a real and imminent threat. Leveke also testified, claiming his statements were hyperbole and he had no intention of killing anyone. He told the jury that his messages were meant to get the attention of the Iowa Legislature. On appeal, Leveke contends the government did not have sufficient evidence to prove he made "true threats" because his statements were ambiguous and/or political hyperbole.

"We review the sufficiency of the evidence *de novo*, viewing the evidence and credibility determinations in the light most favorable to the jury's verdict and reversing only if no reasonable jury could have found the defendant guilty." United States v. Ganter, 3 F.4th 1002, 1004 (8th Cir. 2021). "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." United States v. Seals, 915 F.3d 1203, 1205 (8th Cir. 2019) (quoting United States v. Tate, 633 F.3d 624, 628 (8th Cir. 2011)) (internal quotation marks omitted).

-4-

This Court has defined a "true threat" as "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." Doe v. Pulaski Cnty. Special Sch. Dist., 306 F.3d 616, 624 (8th Cir. 2002) (en banc). When determining whether a reasonable recipient would have found the communication conveyed an intent to cause harm or injury, the factfinder may consider:

> 1) the reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened; and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

Id. at 623.

Our precedent establishes that the speaker does not have to intend to carry out the threat in order for the speech to fall outside of the First Amendment's protections. See United States v. Ivers, 967 F.3d 709, 720 (8th Cir. 2020) (noting whether the defendant had any intention of acting on the threat is irrelevant); United States v. Mabie, 663 F.3d 322, 333 (8th Cir. 2011) ("The government need not prove that Mabie had a subjective intent to intimidate or threaten in order to establish that his communications constituted true threats.").

Contrary to Leveke's argument that his statements were mere political hyperbole, a jury could have reasonably concluded that Leveke's messages constituted a true threat of present or future violence and that he intended to communicate a threat. Section 875(c) is violated if the government proves the defendant communicated a true threat and "transmitted [that] communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat." United States v. Dierks, 978 F.3d 585, 591 (8th Cir. 2020) (quoting Elonis v. United States, 575 U.S. 723, 740 (2015)) (cleaned up). Here, Leveke's statements were neither ambiguous nor ambivalent. Leveke explicitly

threatened to conduct a mass shooting of the Iowa Legislature for the lawmakers' alleged constitutional violation. He communicated his intent directly to Senator Quirmbach. Leveke expressed a belief that the Second Amendment was created so politicians (and perhaps others) may be killed for failing to act in accordance with the law. Both Senator Quirmbach and Kattenhorn testified that they found Leveke's statements to be threatening and frightening. Leveke testified that he wrote his emails to get the Senate's attention to provoke action. Leveke's statements were objectively threatening, and neither ambiguous nor political hyperbole. The evidence is sufficient to satisfy the elements required for convictions under § 875(c).

## 2.    Jury Instructions

Leveke contends the jury instructions were erroneous because (1) they failed to define a "true threat" as a statement made by a defendant only when he subjectively intends to threaten the victim(s), (2) they did not require the jury to consider whether the statements were objectively "true threats," and (3) the court issued a *sua sponte* instruction regarding the First Amendment.

Before the district court, Leveke raised only one of these three challenges. Because Leveke challenged the subjective intent instruction below and on appeal, we review that argument for abuse of discretion. See United States v. Wilkins, 25 F.4th 596, 600 (8th Cir. 2022). We review Leveke's other arguments for plain error. See United States v. Spencer, 998 F.3d 813, 818 (8th Cir. 2021). We will reverse only if the error was not harmless. Dierks, 978 F.3d at 591.

At trial, Leveke argued that a statement constitutes a "true threat" only if the defendant actually intended to commit unlawful violence against the object of the threat. Leveke's argument misstates the law. See id. at 592 (stating § 875(c) requires a subjective finding of intent to send a threat or knowledge that the communication could be viewed as a threat plus an objective finding that the communication was threatening); see also Ivers, 967 F.3d at 720–21; Mabie, 663 F.3d at 333. Even assuming the district court erred by not making the objective

-6-

component of § 875(c) clearer in the instructions, any error is harmless because Leveke's statements were objectively threatening, and a rational jury would have found Leveke guilty beyond a reasonable doubt absent the purported error. See Dierks, 978 F.3d at 592.

As to Leveke's final claim regarding the court's *sua sponte* instruction about the applicability of the First Amendment, Leveke repeatedly claimed his emails were not threats but constitutionally protected political hyperbole. He specifically testified: "I can say whatever I want as long as it's not a true threat, and this ain't a true threat." In response to the testimony and without objection, the court told the jury that it need not concern itself with the First Amendment regardless of whether the government proved its case. "We will not find error when the jury instruction fairly and adequately submitted the issue to the jury and will only reverse when the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." United States v. Mink, 9 F.4th 590, 610–11 (8th Cir. 2021) (cleaned up). Because we find that, when taken as a whole, the instructions sufficiently articulated the elements for the charges and the matters were fairly and adequately submitted to the jury, there was no reversible error.

### 3. Sufficiency of the Indictment

Leveke has submitted a *pro se* supplemental brief in which he argues the indictment failed to state an essential element of his offense: that a statement may only be considered a true threat if a reasonable person would interpret that statement as a threat. While we generally do not accept *pro se* briefs when a party is represented by counsel, United States v. Parks, 902 F.3d 805, 815 (8th Cir. 2018), we may quickly dispose of Leveke's argument. "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. United States v. Sholley-Gonzalez, 996 F.3d 887, 893 (8th Cir. 2021) (cleaned up). The indictment pleaded the essential elements for

§ 875(c) offenses. See Elonis, 575 U.S. at 732, 740 (stating elements of 18 U.S.C. § 875(c) include: (1) a communication transmitted in interstate commerce, (2) that contains a threat, and (3) which is transmitted for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat).

### 4. Right to a Speedy Trial

When a defendant brings a speedy trial challenge under both the Speedy Trial Act and the Sixth Amendment, we review the claims separately. United States v. Johnson, 990 F.3d 661, 666 (8th Cir. 2021). We review the "district court's findings of fact for clear error and its legal conclusions *de novo*." United States v. Flores-Lagonas, 993 F.3d 550, 562–63 (8th Cir. 2021).

#### A. The Speedy Trial Act

While the Speedy Trial Act provides that the trial of a criminal defendant who has pled not guilty must begin within seventy days from the date of the indictment or arraignment, whichever is later, the Act excludes certain periods of delay from this calculation. 18 U.S.C. § 3161(c)(1) & 3161(h). One such excludable period is when the judge overseeing the trial grants a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Id. § 3161(h)(7)(A).

Leveke asserts the district court unlawfully used the "ends of justice" provision to postpone all jury trials due to the COVID-19 pandemic without consideration as to whether relatively straight-forward trials could be held. He argues his jury trial was not especially complex, had limited witnesses, and revolved around the interpretation of two emails and thus should have occurred within seventy days of his indictment. This Circuit has not yet decided whether the "ends of justice" may be properly invoked to delay jury trials due to the COVID-19 pandemic. The Ninth Circuit and Sixth Circuit have generally answered this question in the affirmative. See United States v. Olsen, 21 F.4th 1036, 1044–47, 1049 (9th Cir.

2022) (per curiam) (announcing certain factors district courts should consider when granting trial continuances due to the COVID-19 pandemic and holding the district court erred by dismissing the defendant's indictment with prejudice); United States v. Roush, No. 21-3820, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021), cert. denied, 142 S. Ct. 1187 (2022) (determining the district court did not abuse its discretion when it found postponing or limiting jury trials during the COVID-19 outweighed the defendant's right to a speedy trial).

Here, the district court issued numerous administrative orders explaining how and why the COVID-19 pandemic was interrupting jury trials in the entire district. See, e.g., U.S. Dist. Court for the S. Dist. of Iowa, Pub. Admin. Order No. 20-AO-8-P (Apr. 8, 2020) (explaining the continuances were necessary given the severity of the risk posed to the public and recommendations from the Centers for Disease Control and Prevention, among other reasons). As COVID-19 infection rates in the surrounding counties fluctuated, so too did the availability of jury trials. Compare U.S. Dist. Court for the S. Dist. of Iowa, Pub. Admin. Order No. 20-AO-14-P (June 29, 2020) (reopening all divisions other than the Central Division), with Admin. Order No. 20-AO-19-P (suspending jury trials in the Central Division due to record-high rates of infection and an "extraordinary outbreak" in the Polk County Jail). Aside from general administrative orders, the court also made findings relating to Leveke's individual case. While responding to Leveke's litany of motions, the district court elaborated on COVID-19's disruption to the entire judicial system and how Leveke's jury trial could not have taken place sooner given the safety hazards posed by the rising COVID-19 infection rate in Leveke's area. It is evident the district court considered the factors in § 3161(h)(7)(B) and did not err in continuing Leveke's jury trial under § 3161(h)(7)(A).

While Leveke contends his trial could have been held sooner because he requested a bench trial, the record demonstrates Leveke continually waffled on his desire to have a bench trial and did not waive his right to a jury trial. During the status conference shortly before Leveke's desired date for a bench trial, the district court went through in-detail with Leveke his right to a jury trial and waiver of that

right. The court informed Leveke that a conditional waiver would not be accepted since trial was only four days away and withdrawal of a waiver would be unworkable for the prosecution and its witnesses, not to mention the difficulty of summoning a jury on such short notice. Armed with this information, Leveke refused to unconditionally waive his right to a jury trial. Trial commenced a few weeks later. On this record, the district court did not abuse its discretion in not accepting Leveke's conditional waiver. See Zemunski v. Kenney, 984 F.2d 953, 954 (8th Cir. 1993) (finding a motion to withdraw a jury waiver may be untimely and properly denied if it would "unduly interfere with or delay the proceedings") (cleaned up).

Leveke also contends the district court should have granted his initial request sooner to move his trial to another division where jury trials had resumed. Criminal defendants have no constitutional right to be tried in a particular division within the district and state where the alleged crime took place. United States v. Worthey, 716 F.3d 1107, 1112 (8th Cir. 2013). "The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. Because district judges have broad discretion to determine where to hold the trial, a defendant must show abuse of that discretion or prejudice. United States v. Stanko, 528 F.3d 581, 584 (8th Cir. 2008).

The government resisted Leveke's request to move the case to another division, stating its witnesses were located in the Central Division and Leveke's transportation to another detention facility would potentially spread COVID-19. While Leveke repeated his request at a status conference on September 4, 2020, he proceeded to make indefinite statements about wanting a jury trial or a bench trial. Ultimately, the court granted Leveke's request to move divisions on September 16, 2020, ordering that a jury trial would take place in the Eastern Division on September 29, 2020. The trial took place on that date in that division. We find no abuse of discretion in the court's timing of granting Leveke's request to change divisions.

Additionally, Leveke has not shown prejudice caused by the delay. While he points to a longer period of detention, repossession of his vehicle, increased pretrial anxiety, and an in-custody assault, none of these circumstances demonstrate he was deprived of an opportunity to properly defend himself at trial. See id.

### B.  The Sixth Amendment

To show a Sixth Amendment speedy trial violation, the defendant must allege the interval between accusation and trial has crossed a line from ordinary to presumptively prejudicial delay. United States v. Saguto, 929 F.3d 519, 523 (8th Cir. 2019) (quoting United States v. Aldaco, 477 F.3d 1008, 1019 (8th Cir. 2007)) (cleaned up). If the defendant makes that threshold showing, then we proceed to analyze the following factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Flores-Lagonas, 993 F.3d at 563 (quoting Barker v. Wingo, 407 U.S. 514, 530 (1972)) (internal quotation marks omitted).

Leveke's constitutional claim fails because he has not shown that a nine-month delay was presumptively prejudicial. See United States v. Walker, 840 F.3d 477, 485 (8th Cir. 2016) (determining eleven-and-a-half-month delay meets threshold for first factor, but barely). Having failed to satisfy the first factor, our analysis ends. See United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003) (stating if no presumptively prejudicial delay exists, the court need not examine the remaining three Barker factors).

## III.  CONCLUSION

For the foregoing reasons, we affirm Leveke's convictions.

_____