# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1182
_____

United States of America

*Plaintiff - Appellee*

v.

Nathan Nosley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: October 20, 2022
Filed: March 17, 2023
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Nathan Nosley appeals his convictions and sentence of 1,680 months' imprisonment for seven counts of child-exploitation and child-pornography offenses, violations of 18 U.S.C. §§ 2251, 2252, and 2252A. Specifically, he

challenges the jury selection, the jury instructions, the sufficiency of the evidence, and the reasonableness of the district court's[1] sentence. We affirm.

## I.

Nosley was tried in June 2021. With the parties' consent, a magistrate judge[2] presided over jury selection. Before administering the oath, the magistrate judge explained the importance of remaining impartial and asked the prospective jurors to be frank about their opinions and experiences. After the oath, the magistrate judge read a statement of the case so that the prospective jurors knew that Nosley faced charges of sexually exploiting minors and of distributing, receiving, possessing, and accessing child pornography. *Voir dire* then proceeded, conducted by the magistrate judge, with additional questions from the parties. The questions probed the jurors' abilities to hear and evaluate disturbing evidence, their experiences serving on juries, and their inclinations or disinclinations to believe victims and law enforcement.

Several prospective jurors expressed concerns over having to view and hear disturbing facts involving sexual exploitation of children.[3] One of them, Juror 1, said at a sidebar that she doubted whether she could be objective because her daughter had been sexually assaulted. She said she was "hopeful" that she could, but that it was "close." The court allowed the parties to ask her additional questions. In response to the Government's questions, Juror 1 said that she would try to separate the facts of Nosley's case from the facts of her daughter's experience and that she would follow the instructions of the court. Nosley's counsel then asked Juror 1 if she would be more likely to believe victims of abuse, to which she responded "yes"

---

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

[2]The Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

[3]For simplicity, we designate the three relevant jurors as Juror 1, Juror 2, and Juror 3.

and that it would be difficult and "very personal" for her to impartially consider testimony. Nosley's counsel then moved to strike Juror 1 for cause. The magistrate judge permitted the Government to ask follow-up questions of Juror 1. To those, Juror 1 responded that she would be able to take the law as given by the court and apply it to the facts of the case. She added that she would judge witness credibility based on the facts and that she would not give special weight to the credibility of law enforcement simply by virtue of their status as officers. The magistrate judge also rehabilitated the juror:

> The Court: But it's important that you're going to be able to see all the evidence in this case, that you're going to be fair and impartial, and that's what you are signing up for. Are you going to be able to do it, even if it's difficult?
>
> Juror 1: Understood, yes.

The magistrate judge denied Nosley's motion to strike Juror 1 for cause.

*Voir dire* continued. Nosley's counsel prefaced a question about impartiality with a description of the anticipated evidence at trial, including images and videos of child exploitation:

> So you're going to have to try to think right now, based on knowing yourself, "If I see these images, is that going to create a physical response for me where I'm not able to view the evidence or I can't discuss the evidence with the other people here, because I'm triggered for whatever reason." Your trigger could be fainting. It could be a panic attack. It could be anger. It could be depression. There's all sorts of emotions that you might have when that's—if that's presented in court. So I guess how many people feel like it would be difficult for you to be on this jury knowing that that may be the content that ultimately comes into evidence?

A few of the prospective jurors were visibly uncomfortable or upset. Juror 2 answered, "If I have to see images like that or videos, that will repulse me."

| | |
|---|---|
| Defense Counsel: | Okay. And then I would assume that if that were the case, you wouldn't be able to remain fair and impartial? |
| Juror 2: | Correct. |

A similar exchange occurred with Juror 3:

| | |
|---|---|
| Defense Counsel: | . . . And, [Juror 3], you also mentioned this being difficult for you as well? |
| Juror 3: | Yeah, I have a young granddaughter that I would have a hard time dealing with that I think. |
| Defense Counsel: | Okay. And I guess the same follow-up question, if you saw something like that, would it -- and you couldn't get that out of your mind, would you be able to be fair and impartial at that point? |
| Juror 3: | No, I don't believe so. |

The magistrate judge then interjected and attempted his own rehabilitation of the two jurors. With Juror 3, the following exchanged occurred:

| | |
|---|---|
| The Court: | [T]he real question is, not just that it would be difficult for you to see those images and it might have some personal effect on you for some time after you've seen the images, but my question is, are you going to be able after having seen those images to recognize that, yes, you might be having some sort of visceral response to having seen those images, that everybody is going to have to some extent some of those, but are you going to be able to put those out of your train of judgment and be what you are supposed to be in this case, which is a trier of the facts and determine whether, in fact, the government has proven the elements of its case and not just go with your gut? . . . |
| Juror 3: | Probably. |

The magistrate judge similarly rehabilitated Juror 2.

-4-

Nosley moved to strike Juror 2 and Juror 3 for cause, arguing that Juror 2 had appeared visibly perturbed and that both jurors said they could not be fair. During argument on the motion, the magistrate judge emphasized to Nosley's counsel the different framing of their respective questions and explained why he interjected when he did. The magistrate judge "took [the jurors] responses" as indicating that "they would be able to put [their visceral reactions] aside and be able to view the evidence based on the facts" and be fair and impartial. The magistrate judge denied the motions with leave to reconsider if Nosley's counsel wished to ask additional questions of the jurors. Counsel declined to do so. Ultimately, Nosley used his peremptory challenges to remove Juror 1 and Juror 2. Juror 3 was empaneled.

Trial proceeded, and the Government presented testimony from two victims (R.A. and A.S.), two investigators, and Nosley's ex-girlfriend. The victims testified that at the time of the relevant conduct, R.A. was thirteen years old and A.S. was sixteen. Both testified to having sexually explicit communications on Snapchat with a user called "Pdogg," which later testimony showed was Nosley. In these communications, Nosley expressly asked each victim for nude and sexually explicit pictures. Both girls testified that they sent him many such pictures, including ones of their genitals. Both identified numerous sexually explicit videos and pictures that they took of themselves and sent to Nosley. These videos and pictures were found on devices owned by Nosley and sent from his Gmail account. Both victims also testified that Nosley sent them sexually explicit content, including pictures of his penis and videos of him masturbating.

Two investigators then testified. In addition to their testimony about finding videos and pictures on Nosley's electronic devices and his Gmail account, they testified about a November 2020 interview they conducted with him. A recording of this interview was admitted into evidence. In the interview, the investigators showed Nosley images of R.A. and A.S. Nosley admitted that he asked both for pictures of themselves but maintained that it was consensual.

Later, Nosley's ex-girlfriend testified about her relationship with Nosley and about her daughter. The Government had already introduced, under Federal Rule of Evidence 414, communications from Nosley to his ex-girlfriend in which Nosley described twice engaging in oral sex with her daughter. When asked about these communications, she testified that she was upset after Nosley was acquitted in state court for charges based on his alleged sexual contact with her daughter. She felt that there were still unanswered questions and wanted more information about the allegations.

At the close of evidence, Nosley moved for judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29. He argued that there was insufficient evidence to support them. The district court denied his motion, and the jury returned guilty verdicts on each count. Accounting for statutory maximums, the court calculated the advisory sentencing guidelines range as 1,680 months' imprisonment (otherwise the guidelines range would have been life imprisonment). The court sentenced Nosley to 1,680 months' imprisonment.

Nosley appeals. Specifically, he challenges the district court's failure to strike Jurors 1, 2, and 3 for cause; the district court's refusal to instruct the jury on a mistake-of-fact defense as to his knowledge of the victims' ages; the district court's denial of his motion for judgment of acquittal on Count I (production of child pornography) and Count II (distribution of child pornography); and the substantive reasonableness of his sentence.

**II.**

First, we address Nosley's argument that the district court erred during jury selection by not disqualifying jurors who expressed concern with their ability to be fair and impartial in light of the expected subject matter of the trial. We review the denial of a motion to strike a juror for cause for abuse of discretion. *United States v. Farrington*, 42 F.4th 895, 899-900 (8th Cir. 2022). Fact findings of juror

impartiality are "entitled to special deference and may be overturned only for manifest error." *United States v. Nelson*, 347 F.3d 701, 711 (8th Cir. 2003).

The Sixth Amendment guarantees a defendant the right to trial "by an impartial jury." "Impartiality is presumed so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *United States v. Wright*, 340 F.3d 724, 733 (8th Cir. 2003) (internal quotation marks omitted). Although Nosley's motions to strike Jurors 1 and 2 for cause were denied, he used his peremptory challenges to remove both. Peremptory challenges "are but one . . . means to the constitutional end of an impartial jury and a fair trial"; they are not a constitutionally protected right in themselves. *Georgia v. McCollum*, 505 U.S. 42, 57 (1992). Thus, a defendant is not deprived of his rights when he uses peremptory challenges to strike a juror that the district court should have removed for cause. *See United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000); *United States v. Johnson*, 495 F.3d 951, 964-65 (8th Cir. 2007). For the Sixth Amendment, the ultimate inquiry remains the impartiality of the petit jury. *Nelson*, 347 F.3d at 710. We therefore focus only on the denial of Nosley's motion to strike Juror 3, who actually sat on the jury that found Nosley guilty.

Reversal of a refusal to strike a juror is a "high hurdle" to clear in light of the impartiality presumption because "a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court." *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006). "Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position." *Id.* at 650-51.

Jurors are not robots. They are not required to suppress all emotional or visceral reactions to troubling facts. Instead, they are called upon to be impartial despite those reactions, even while they may acknowledge that doing so may be difficult. *See Moran*, 443 F.3d at 651. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is

sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Murphy v. Florida*, 421 U.S. 794, 800 (1975). "An initial impression about a case does not disqualify a juror if the district court accepts the juror's assurances that he or she will set aside any preconceived beliefs and follow the court's instructions." *United States v. Barraza*, 576 F.3d 798, 803 (8th Cir. 2009). In recognition of this, we have held that a juror's emotional reaction to seeing images of child pornography does not necessarily render that juror unable to be fair and impartial or establish that the juror's objectivity has been compromised. *See United States v. Spotted Horse*, 914 F.3d 596, 602 (8th Cir. 2019) (discussing the standard for replacing a juror with an alternate).

More broadly, we have affirmed refusals to strike jurors for cause where the jurors expressed only general uncertainty or reservations about their ability to be impartial, like their difficulty in dealing with the subject matter of a case or their general disapproval of the kind of criminal activity alleged, rather than specific biases in favor of certain witnesses or against the defendant. *See, e.g.*, *Johnson*, 495 F.3d at 964; *United States v. Jones*, 865 F.2d 188, 190 (8th Cir. 1989); *Barraza*, 576 F.3d at 801-04. In *Johnson*, we affirmed the denial of a challenge to a juror who stated that "his empathy for the victim's family and the fact that the crime involved children could affect his judgments about the case" because the district court ultimately concluded that those statements "reflected the reasonable self doubts of a conscientious and reflective person." 495 F.3d at 964 (internal quotation marks omitted). In *Jones*, we found no abuse of discretion in a district court's refusal to strike a juror who expressed having difficulty with "the whole subject of drugs" because she "fe[lt] very strongly, raising teenagers." 865 F.2d at 190. We noted that the juror "would try to base her decision on the evidence, but honestly did not know if her feelings would influence the way in which she viewed the evidence." *Id.* And in *Barraza*, a case involving the murder of a five-year old, we found no abuse of discretion in a district court's refusal to strike a juror who had "described his sense of parental responsibility" and how it might affect his ability to hear the evidence. 576 F.3d at 801-04.

Here, the magistrate judge conducted extensive *voir dire*, and the parties had ample opportunity to examine the jurors. Throughout the process, the magistrate judge took care to rehabilitate wavering jurors by focusing them on what they were being asked to do as jurors—listen to the evidence and fairly and impartially judge the facts. Juror 3 expressed possibly having difficulty in dealing with the subject matter of child exploitation because he had a young granddaughter. Yet there was no indication that the granddaughter herself or anyone else in his family had been exploited. Instead, Juror 3's reservations were of a more general nature. He did not, for example, express a willingness to favor law-enforcement testimony or appear to harbor specific feelings against Nosley. *See United States v. Nelson*, 277 F.3d 164, 201-03 (2d Cir. 2002) (holding that the district court abused its discretion by failing to strike a juror who, after expressing disappointment that the defendant was not convicted in state court, said that he "would like to think" of himself as objective but that he "[h]onestly . . . [didn't] know" (alterations in original)). We are satisfied that the issue of interpreting Juror 3's "probably" was "one of demeanor and credibility." *See United States v. Blom*, 242 F.3d 799, 806 (8th Cir. 2001). Ultimately, the magistrate judge accepted Juror 3's responses as indicating that he would be able to put aside his visceral reactions and impartially consider the evidence. On this record, that finding was not "manifest error," and the court did not abuse its discretion in refusing to remove Juror 3. *See Nelson*, 347 F.3d at 711.

Nosley counters that Juror 3's "probably" was insufficient assurance of his ability to be fair and impartial. He appears to rely on *United States v. Sithithongtham*, although he does not cite it in his brief. *See* 192 F.3d 1119, 1120-21 (8th Cir. 1999). In that case, three prospective jurors said that they would tend to favor law-enforcement testimony. When pressed by the judge, one managed to say that he "could probably be fair and impartial." *Id.* at 1121. We indicated that in light of the jurors' specific biases in favor of law-enforcement testimony, stronger assurances of impartiality were needed and that "'[p]robably' is not good enough." *Id.* We ultimately held, however, that regardless of the district court's refusal to remove the jurors for cause, there was no reversible error because Sithithongtham used his peremptory strikes to remove them. *See id.* at 1123. We therefore doubt

that *Sithithongtham*'s statement about the juror's use of the word *probably* was necessary to the holding of the case. *See Passmore v. Astrue*, 533 F.3d 658, 661 (8th Cir. 2008).

Nonetheless, on its merits, Nosley's *Sithithongtham*-like argument fails for two reasons. First, the juror-impartiality inquiry cannot be reduced to magic words read from a transcript. Context matters, as the above cases show. A "probably" from a juror in one case may mean something entirely different than a "probably" from another. One could convey sufficient assurance, while another might express hesitation and doubt. Which is the proper interpretation will depend on the particular juror's answers in light of the *voir dire* as a whole. And the district court "is in the best position to analyze the demeanor and credibility of a venireman." *Johnson*, 495 F.3d at 964. Its "appraisal [of impartiality] is ordinarily influenced by a host of factors impossible to capture fully in the record, such as a prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *United States v. Tsarnaev*, 595 U.S. ---, 142 S. Ct. 1024, 1034 (2022) (internal quotation marks omitted). Accordingly, we "afford substantial deference to the district court" and will affirm its rulings on juror bias where the decision is fairly supported by the record. *See Nelson*, 347 F.3d at 710. And second, *Sithithongtham* involved jurors who expressed specific biases in addition to uncertainty about their ability to overcome them, which necessitated stronger assurances of their impartiality. In contrast, Juror 3 expressed no specific biases in favor of government witnesses. *See Barraza*, 576 F.3d at 803-04 (noting a similar distinction from *Sithithongtham*). Rather, his discomfort was of a more general nature and related to the disturbing subject matter of child exploitation and child pornography. For these reasons, we find no abuse of discretion here.

## III.

Next, we address Nosley's challenge to the district court's refusal to instruct the jury that the Government was required to prove that he had knowledge of the age of the victims for Count I (production of child pornography). He seeks a new trial.

"We review for abuse of discretion the district court's formulations of jury instructions." *United States v. White Calf,* 634 F.3d 453, 456 (8th Cir. 2011). Nosley asks that we overrule our decision in *United States v. Wilson*, which recognized that 18 U.S.C. § 2251(a) contains no scienter requirement as to the victim's age and that mistake of age is not a defense to charges of producing child pornography in violation of § 2251(a). *See* 565 F.3d 1059, 1066-69 (8th Cir. 2009); *see also United States v. Moreira-Bravo*, 56 F.4th 568, 573-74 (8th Cir. 2022) (discussing *Wilson*). But "[i]t is well-established in our circuit that one panel cannot overrule an opinion filed by another panel." *United States v. Bearden*, 780 F.3d 887, 896 (8th Cir. 2015). Nosley cites no intervening Supreme Court precedent that "cast[s] into doubt" *Wilson. See McDonough v. Anoka Cnty.*, 799 F.3d 931, 941 (8th Cir. 2015). We therefore reject his argument and find no abuse of discretion in refusing to give his requested instruction.

## IV.

We now turn to Nosley's challenge to the sufficiency of the evidence supporting the verdict on Counts I and II for producing and distributing child pornography. We review *de novo* the district court's denial of his motion for judgment of acquittal. *See United States v. Yarrington*, 634 F.3d 440, 449 (8th Cir. 2011). "We evaluate the evidence in the light most favorable to the verdict, reversing only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Fang*, 844 F.3d 775, 778 (8th Cir. 2016) (internal quotation marks omitted). Importantly, "we do not weigh the evidence or assess the credibility of the witnesses"—that is for the jury. *United States v. Polk*, 715 F.3d 238, 247 (8th Cir. 2013) (brackets omitted).

On appeal, Nosley attacks the jury's findings that the victims were minors at the time of the offense, that they were enticed by Nosley, and that he distributed the child pornography rather than someone else who might have had access to his devices (like his ex-girlfriend). All three challenges amount to mere credibility attacks. The two victims testified about their interactions with Nosley and their

respective ages at the time. They testified that Nosley asked them to send him sexually explicit images and videos of themselves, which they did. Their testimony was corroborated by investigators and by images and videos taken from Nosley's devices. Further support included evidence of emails sent from Nosley's Gmail account that contained sexually explicit pictures of R.A. and A.S. as attachments. Nosley argues that testimony about these matters is insufficient, especially given that there were no records of the Snapchat messages in evidence or of specific documentation of the victims' ages. But these matters were all the subject of testimony, and witness credibility is for the jury to evaluate. It is "virtually unassailable on appeal." *United States v. Collier*, 932 F.3d 1067, 1079 (8th Cir. 2019); *see Fang*, 844 F.3d at 779 ("A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony."). We therefore affirm the district court's denial of Nosley's motion for acquittal.

## V.

Finally, we turn to Nosley's argument that his sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Crumble*, 965 F.3d 642, 646 (8th Cir. 2020). In doing so, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* "[I]t is the unusual case when we reverse a district court sentence as substantively unreasonable." *Id.* (ellipses omitted). Sentences within the advisory sentencing guidelines range are presumptively reasonable. *United States v. Jones*, 990 F.3d 1141, 1144 (8th Cir. 2021).

Nosley argues that his sentence is substantively unreasonable because the district court erred by relying on evidence of conduct for which he was acquitted in state court. Specifically, he argues that the district court should not have credited his ex-girlfriend's testimony about the messages she received from Nosley purportedly confessing to sexually abusing her daughter.

-12-

We find no abuse of discretion.  The district court carefully considered the 18 U.S.C. § 3553(a) factors and sentenced Nosley within the guidelines range, the calculation of which Nosley does not challenge.  The district court noted Nosley's "extremely dangerous" conduct in pulling a loaded handgun from his waistband and pointing it at a law-enforcement officer's head when he was arrested.  The court then emphasized that Nosley's offense conduct was "particularly disturbing."  It also found by a preponderance of the evidence that Nosley had sexually abused his ex-girlfriend's daughter.  It did not err in considering this conduct, even though Nosley was acquitted of it in state court.  *See United States v. Lasley*, 832 F.3d 910, 914 (8th Cir. 2016).  Finally, after a thorough review of Nosley's background, criminal history, mitigating factors, and conduct surrounding these offenses, the district court found that he showed "no remorse, no repentance here whatsoever."  It then sentenced him to the statutory maximum on each count to be served consecutively.  That sentence is not substantively unreasonable.[4]  *See United States v. Jones*, 990 F.3d 1141, 1144 (8th Cir. 2021) ("As the term of imprisonment was within the advisory guideline range, we presume that it is reasonable.").

## VI.

For the foregoing reasons, we affirm Nosley's convictions and sentence.

———————————————

—————————————

[4]We also find no merit to Nosley's argument that his sentence would result in broader sentencing disparities.  He received a sentence within the guidelines range. *See United States v. Heim*, 941 F.3d 338, 340 (8th Cir. 2019) ("[W]hen a sentencing judge correctly calculates and carefully reviews the Guidelines range, she necessarily gives significant weight and consideration to the need to avoid unwarranted disparities." (brackets omitted)).