# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2703
_____

United States of America

*Plaintiff - Appellee*

v.

Derrick Darryl Trawick, also known as KG

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa
_____

Submitted: June 16, 2023
Filed: October 6, 2023
[Unpublished]
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

PER CURIAM.

In January 2022, Derrick Trawick was convicted of aiding and abetting the distribution of a controlled substance near a protected location. The district court[1] sentenced Trawick to 400 months of imprisonment. On appeal, Trawick challenges

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

his conviction, arguing the district court should have declared a mistrial for juror misconduct, or alternatively granted a motion for a new trial because the evidence was insufficient to convict. He also appeals his sentence, arguing the district court procedurally erred when calculating his base offense level. We affirm.

## I. Background

In May 2019, first responders responded to a 911 call from a motel room in Dubuque, Iowa. There, they found a woman on a bed unconscious and not breathing. The woman regained consciousness after a medic began performing CPR. A sample of her blood showed evidence of numerous controlled substances in her system. Syringes and traces of heroin were found in the motel room. The woman had purchased heroin she used that evening in a transaction Trawick arranged.

In May 2021, a grand jury indicted Trawick with aiding and abetting the distribution of heroin and fentanyl near a protected location resulting in serious bodily injury, and a four-day trial ensued. *See* 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a). After the second day of trial, a juror spoke with court officials, stating she overheard another juror making unsettling comments. This juror was alleged to have used foul language in the jury box when complaining under his breath about the length of the trial, and to have done so specifically when defense counsel spoke. In addition, it was reported that the juror made a comment stating, "I'm not a racist, but . . ." and followed it up with an additional comment perceived to be about race. The district court subsequently excused the juror from the case, replacing him with an alternate juror.

After excusing the juror, the district court interviewed each juror individually, asking about what they had heard from the excused juror and, if necessary, whether any of those statements could impact his or her ability to be impartial. Over the course of the inquiry, several of the jury members informed the court they heard a variety of comments from the excused juror, both in the jury box and outside the courtroom. These included comments about the slow pace of trial. In addition, the

jurors stated that the excused juror made comments about people from Chicago, Dubuque becoming a different city than when the excused juror grew up, and race in general. No juror stated he or she believed the comments would impact his or her ability to remain impartial. Trawick moved for a mistrial. The court denied the motion, citing the jurors' statements and the court's confidence the jury was impartial and would rule based on the law and evidence.

The trial continued, and the jury found Trawick guilty of aiding and abetting the distribution of a controlled substance near a protected location.[2] Trawick moved for a new trial, based in part on the weight of the evidence. More specifically, Trawick argued he chose to walk away from the drug transaction before it was complete. The district court denied the motion, citing the credibility of the government's witnesses, evidence he was a regular dealer of heroin, and evidence he intentionally sold drugs on that evening in May 2019.

At sentencing, the district court determined Trawick was involved in the dealing of at least 90,000 kilograms of converted drug weight, with a PSR estimate of 446,868.6 kilograms from five different drugs. Based on a total offense level of 39 and his criminal history category of VI, the district court calculated an advisory range of 360 to 480 months under the United States Sentencing Guidelines ("Guidelines"). The district court then sentenced Trawick to 400 months of imprisonment.

## II. Analysis

Trawick appeals the district court's denial of his motion for a mistrial after the juror was dismissed, stating the juror's comments polluted his right to an impartial jury. He also appeals the district court's denial of his motion for a new trial, arguing the weight of the evidence was insufficient to sustain a conviction. Finally, he

---

[2]The jury, however, concluded the government did not prove beyond a reasonable doubt that the heroin and fentanyl resulted in serious bodily injury.

appeals his sentence, challenging the district court's drug quantity calculation. We address these arguments in turn.

## A. Denial of a Motion for a Mistrial

Trawick argues the district court erred in denying his motion for a mistrial after the court's inquisition concerning the excused juror's comments. Specifically, he contends the court should have given little to no credit to the jurors' claimed impartiality. Further, Trawick argues the discharged juror's allegedly racist comments tainted his right to an impartial jury because he is black and the purchaser was white.

"We review the denial of a motion for mistrial for abuse of discretion." *United States v. Spotted Horse*, 916 F.3d 686, 693 (8th Cir. 2019). We have explained that "[i]mpartiality is presumed so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *United States v. Nosley*, 62 F.4th 1120, 1126 (8th Cir. 2023) (quoting *United States v. Wright*, 340 F.3d 724, 733 (8th Cir. 2003)). District courts are provided broad discretion in addressing juror bias. *See United States v. Young*, 6 F.4th 804, 809 (8th Cir. 2021) (noting that how to best remove the possibility of racial bias is subject to the broad discretion of the district court); *see also Munt v. Grandlienard*, 829 F.3d 610, 615 (8th Cir. 2016) (explaining, in the habeas corpus context, "we afford trial courts substantial deference in determining juror bias").

Mistrials are not necessitated by minor imperfections. *See United States v. Smith*, 383 F.3d 700, 707 (8th Cir. 2004) ("We do not live in a perfect world, and a criminal defendant is not guaranteed a perfect trial, just a fair one."). And, "[i]t seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible[.]" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). In our cases, for example, when considering whether a district court abused its discretion, we have looked to whether jurors "were

-4-

exposed to any prejudicial extrinsic information related to a substantive issue at trial[.]" *United States v. Evans*, 272 F.3d 1069, 1087–88 (8th Cir. 2001).

Trawick's argument implies some or all of the jurors concealed their bias against him since each juror stated they would remain fair and impartial. But Trawick must prove his point with more than speculation:

> Pursuant to *McDonough Power Equipment, Inc. v. Greenwood*, . . . a party seeking a new trial on the basis of concealed juror bias must prove three things: (1) that the juror answered dishonestly, not just inaccurately; (2) that the juror was motivated by partiality; and (3) that the true facts, if known, would have supported striking the juror for cause.

*United States v. Ruiz*, 446 F.3d 762, 770 (8th Cir. 2006). Trawick fails to point to evidence meeting this standard. Without such evidence, we conclude the district court did not abuse its discretion in denying Trawick's motion for a mistrial.

## B. Denial of a Motion for a New Trial

Trawick also argues the district court erred in denying his motion for a new trial. "We review denial of a motion for a new trial for abuse of discretion." *United States v. Griggs*, 54 F.4th 531, 536 (8th Cir. 2022). In reviewing "the district court's denial of a motion for a new trial for abuse of discretion . . . [we] reverse 'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *United States v. Maxwell*, 61 F.4th 549, 558 (8th Cir. 2023) (quoting *United States v. Walker*, 393 F.3d 842, 848 (8th Cir. 2005)); *see* Fed. R. Crim. P. 33(a). "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." *United States v. Hernandez*, 569 F.3d 893, 897 (8th Cir. 2009) (quoting *United States v. Harrison*, 671 F.2d 1159, 1162 (8th Cir. 1982)).

Jury Instruction 14 directed the jury that in order to convict Trawick, it must find he did not choose to "walk away from the crime before all elements of the distribution of a controlled substance were complete[.]" Trawick argues the evidence of his withdrawal from the crime before its completion was so one-sided that the jury's contrary decision was not permissible. He also vaguely claims his conviction must be overturned because it was obtained using compromised witnesses lacking credibility. We disagree.

To begin, a witness's self-interest is relevant in assessing his or her credibility. *See United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997). However, as in *Cabrera*, the witnesses' testimony in this case "is substantially consistent and corroborated by other evidence." *Id.* at 1247. For example, witness testimony identified Trawick as the person who facilitated the transaction involving heroin. This was corroborated by messages, camera footage, and other physical evidence.

Next, it is well established that "[t]he jury . . . is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard." *United States v. Espino*, 317 F.3d 788, 794 (8th Cir. 2003). Because the witnesses' testimony here is consistent and corroborated by other evidence, we have no basis for concluding the evidence weighs heavily against the verdict. Trawick also fails to show a miscarriage of justice has occurred. Thus, the district court did not abuse its discretion by denying the motion for a new trial.

## C. Sentencing

Trawick argues the district court's drug quantity calculation was imprecise, causing his base offense level to be wrongly inflated. "This court reviews sentencing determinations under a deferential abuse of discretion standard, first ensuring that the district court committed no significant procedural error." *United States v. Wood*, 587 F.3d 882, 883 (8th Cir. 2009). And, "[w]e review for clear error a district court's drug quantity calculation." *Maxwell*, 61 F.4th at 560 (quoting *United States v. Payton*, 636 F.3d 1027, 1046 (8th Cir. 2011)).

Assuming without deciding the district court incorrectly calculated the drug quantity, any error would be harmless. We have said that "even if the district court miscalculated [a defendant's] Guidelines sentence," it "is harmless error 'when the district court indicates it would have alternatively imposed the same sentence even if a lower guideline range applied.'" *United States v. Hamilton*, 929 F.3d 943, 948 (8th Cir. 2019) (quoting *United States v. Dace*, 842 F.3d 1067, 1069 (8th Cir. 2016)). "We will not reverse a harmless error." *United States v. Aungie*, 4 F.4th 638, 644 (8th Cir. 2021) (quoting *United States v. Johnson*, 860 F.3d 1133, 1139 (8th Cir. 2017)). Here, after calculating the advisory Guidelines range, the district court explained that even if its drug quantity calculation was incorrect, it would have imposed the same 400-month sentence in light of the sentencing factors in 18 U.S.C. § 3553(a). Trawick advances no other argument that warrants second-guessing the district court's exercise of its discretion. Therefore, any error is harmless and Trawick's challenge to his drug quantity calculation and base offense level necessarily fails. *See United States v. Stanberg*, 509 F. App'x 552, 554 (8th Cir. 2013) (unpublished per curiam) (holding there was no reversible error where the district court stated it would have given the defendant the same sentence regardless of the drug quantity); *United States v. Staples*, 410 F.3d 484, 492 (8th Cir. 2005) ("An error is harmless if it is clear from the record that the district court would have given the defendant the same sentence regardless of which guidelines range applied.").

### III. Conclusion

We accordingly affirm the judgment of the district court.

KELLY, Circuit Judge, concurring.

I concur in the judgment affirming Trawick's conviction and sentence because he has not shown reversible error as to either. I see no error in the district court's discharging of the offending juror, its polling of the remaining jurors, or its findings about the impartiality of the remaining jurors. I write separately, however, because

the facts underlying the motion for mistrial are concerning and worthy of closer attention.

A criminal defendant is not "guaranteed a perfect trial." But a defendant is entitled to a fair one. Here, Trawick's petit jury included a person who made racist remarks—even if thinly veiled—in earshot of his fellow jurors during the course of the trial. That is not a minor imperfection of the sort we have learned to expect and accept in criminal trials. See, e.g., United States v. Smith, 383 F.3d 700, 707 (2004) (addressing government's failure to disclose rebuttal witness prior to trial). It is a significant problem. See In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.").

Consequently, I would not so casually dismiss Trawick's concerns about unconscious or implicit bias. See United States v. Young, 6 F.4th 804, 812 (8th Cir. 2021) (Kelly, J., concurring). In this case, seven jurors told the district court that they heard the discharged juror make comments about race. Yet, when asked, the discharged juror denied it. Maybe he did so because he knew the comments were inappropriate, or maybe because he did not believe that what he said did, in fact, reflect racial bias. Either way, at least one juror in this case was unable to appreciate the reality that even the appearance of racial bias and discrimination mars the jury trial process. See Peña-Rodriguez v. Colorado, 580 U.S. 206, 224 (2017) ("[R]acial bias [is] a familiar and recurring evil that, if left unaddressed, would risk systemic injury to the administration of justice.").

Perhaps the jurors who ultimately decided Trawick's case were more vigilant in their efforts to remain fair and impartial than a jury whose attention had not been focused on the issue of race. We cannot know the answer to that question. But we can expect courts to be vigilant in their efforts to eliminate bias of all varieties from a criminal trial. And we can hope that there are more citizens like the juror who

brought this matter to the attention of the district court—citizens who also recognize the problem and are willing to be part of the solution.

———————————————————